FRIGORÍFICO MIGUEL H. ORTÍZ, demandante y recurrente, *v.* ISRAEL QUILES, demandado y recurrido.

*Número:* O-72-170      *Resuelto:* 2 de octubre de 1973

*Francisco Seise García,* abogado del recurrente; *Jorge Marín,* abogado del recurrido.

PER CURIAM: Se trata de una demanda en Cobro de Dinero radicada originalmente en el Tribunal de Distrito de Puerto Rico, Sala de Bayamón, y que luego fue trasladada a la Sala de Utuado.

El demandante Miguel H. Ortíz, h/n/c Frigorífico Miguel H. Ortíz, reclamó de los demandados Israel Quiles y José M. Toro, la suma de $245.83 de principal, por concepto de mercancías vendidas, y solicitó que se les condenara a pagarle dicho principal, más las costas y gastos que estimaba en $50.00, más la suma de $125.00 por concepto de honorarios de abogado.

Solicitó por moción que para los efectos de asegurar la efectividad de la sentencia que pudiera recaer en su día a su favor, se decretara el embargo de bienes de los demandados, para cubrir el pago del principal, intereses hasta su completo pago, las costas y gastos que se estiman en $50.00, más una suma de $125.00 por concepto de honorarios de abogado; y el tribunal por orden del 25 de junio de 1969 decretó dicho embargo en cantidad suficiente para "cubrir la suma de $245.83 adeudada y $50.00 para gastos, intereses hasta su completo pago, con una fianza de $666.66, más $125.00 para honorarios de abogado."

Mediante la prestación de la fianza, se expidió el correspondiente Mandamiento de Embargo, que fue diligenciado por el Alguacil de la Sala de Utuado, embargando todo título que pudieran tener los demandados en los siguientes bienes: un botellero marca "Foger"; y un cheque por $245.83.

El codemandado Quiles contestó la demanda alegando que nunca le había cogido mercancía a crédito al demandante y que por consiguiente nada le debía; admitió que él había comprado el negocio del codemandado Toro y era su dueño para el 26 de junio de 1969. Alegó además, que para evitarse el bochorno, el descrédito y el ridículo ante el público con motivo del embargo, prometió pagar la cantidad y efectivamente así lo hizo mediante el envío de un cheque certificado expedido por el Banco de Ponce por la suma de $245.83; alegando el demandado, que dicho envío se hizo antes de efectuarse el segundo embargo por el demandante; y que cuando se efectuó el embargo ya el demandante había recibido el cheque y, por consiguiente, el codemandado Quiles nada le debía; por lo que la actuación del demandante fue "torticera, de mala fe y con el ánimo de hacerle daño en su dignidad personal y la reputación de su crédito." Solicitó que se declarara sin lugar la demanda, con imposición de costas y honorarios de abogado. En igual fecha dicho codemandado Quiles radicó una "reconvención", reproduciendo todas las alegaciones de la contestación a

la demanda; y alegando además, que la actuación "torticera" del demandante contra demandado le había producido angustias mentales, ridículo público y desprestigio a su propia persona y a su crédito; estimando que debía ser indemnizado por ésto en la suma de $5,000.00; que se vió obligado a contratar los servicios del Lcdo. Jorge Marín Báez por la culpa del contra demandado por la suma de $500.00; y que, como consecuencia de la actuación de Ortíz, tuvo que cerrar su negocio por diez días, perdiendo la suma de $200.00; y pidió que se le condenara a pagarle las sumas arriba referidas, más costas y gastos.

Dicha reconvención fue contestada por el reconvencionado alegando que el pago héchole fue posterior a la radicación de la demanda, siendo el mismo consignado en Corte como parte del embargo trabado; negando todos los demás hechos de la reconvención y alegando, como defensa, que Quiles, una vez que aceptó la deuda e hizo el pago de la misma mediante el referido cheque, a través de su abogado, incurrió en una temeridad crasa al luego defenderse y llegar al extremo de reconvencionar y solicitó que se declarara sin lugar la reconvención.

A petición del demandado Quiles, el tribunal ordenó el levantamiento del embargo trabado mediante la prestación de una fianza de $500.00 que fue aprobada y dispuso que se entregara el botellero embargado al demandado Quiles, pero que el cheque embargado permaneciera en custodia en el tribunal.

Celebrada la vista del caso en la Sala de Utuado y oída y recibida la prueba de las partes, el tribunal dictó sentencia declarando sin lugar la demanda contra Quiles, (1) y. con lugar la reconvención.

El tribunal sentenciador determinó como hechos probados: (1) que el demandante Ortíz se dedicaba a vender carnes a comerciantes en Puerto Rico, entre los cuales estaba el co-

---

(1) El codemandado José M. Toro nunca fue emplazado y la acción se siguió únicamente contra Israel Quiles.

demandado Toro; (2) que éste le debía la cantidad de $245.83; (3) que Toro le vendió el negocio a Quiles en febrero de 1968; y que para evitarse el bochorno del embargo y por conducto del Lcdo. Marín Báez, se obligó a enviarle al demandante una fianza para levantar el embargo que se iba a trabar; pero que, en vez de enviar la fianza, remitió un cheque certificado del Gerente del Banco de Ponce por la suma de $245.83; y que sobre el referido cheque también se trabó embargo; (4) que de la prueba de la propia parte demandante aparecía que el demandado nada debía al demandante y que éste ni siquiera lo conocía; (5) que Quiles pagó, aun cuando nada debía, para evitar el bochorno y la humillación que conlleva el embargo; (6) que por razón directa del embargo al demandado Quiles se le afectó su crédito, negándosele crédito para su negocio en los establecimientos de Gregorio Cortés, Francisco Vélez, Inc. y Otilio Rivera, por lo cual tuvo que cambiar su negocio para un salón de billar y barra; (7) que tuvo su negocio cerrado por diez días; (8) y que el hecho de que Toro vendiera su negocio a Quiles no convertía a éste de *jure ni de facto* en deudor del demandante Ortíz a menos que no fuera parte del contrato esa condición y que dicha prueba no fue presentada; y por el contrario fue negado por Quiles; y no convertía en deudor a Quiles el hecho de prometer una fianza para levantar el embargo, ni tampoco el hecho de pagar para evitar el bochorno, humillación y otras consecuencias del mismo; y que, "como cuestión de hecho el demandante cometió un acto torticero contra el demandado Quiles, susceptible de ser indemnizado por haberlo expuesto al descrédito y ridículo público y haberle afectado su crédito y la fama de su persona."

Condenó al demandante y contra demandado Ortíz a pagarle al reconvencionista Quiles la suma de $600.00 por el acto torticero cometido al trabar un embargo cuando se había extinguido la obligación al efectuar el embargo; expresando que dicho "acto torticero produjo en Quiles humillaciones,

descrédito público en su fama, reputación y crédito comercial; y lo condenó además, a pagarle por las pérdidas que tuvo Quiles al cerrar su establecimiento por 10 días, (²) y a pagar $200.00 por honorarios de abogado."

Ordenó la cancelación de la fianza prestada por Quiles para levantar el embargo y al Alguacil, a endosar el cheque embargado y depositarlo en su cuenta bancaria y expidiera un cheque a favor de Quiles por la suma depositada.

Contra dicha sentencia Ortíz radicó escrito de apelación para ante el Tribunal Superior, Sala de Arecibo; el cual dictó sentencia en apelación el 12 de abril de 1972, confirmando la del Tribunal de Distrito, por estimar que todas las conclusiones de hecho y de derecho que hizo dicho Tribunal a quo se ajustaban a la prueba y al derecho aplicables.

El Juez de la Sala de Arecibo del Tribunal Superior incluyó un párrafo en su sentencia que lee así:

"La cuestión suscinta en el presente caso es si la parte tenía derecho a cobrar honorarios de abogado y costas en un procedimiento en cobro de dinero en que tales honorarios no han sido pactados ni las costas determinadas por el Tribunal, antes de que el Tribunal determine que hay temeridad de la parte demandada y fije los mencionados honorarios."

Acordamos revisar, por vía de *certiorari*, los procedimientos y acordar lo que fuera procedente en derecho.

La cuantía envuelta en este pleito es insignificante comparada con el valor del tiempo que le ha tomado al Tribunal de Distrito, al Superior y a este Tribunal; pero existen cuestiones que lo mismo surgen en un caso como éste, que en uno donde haya envuelto millones de dólares; y que nos ha llevado a hacer una relación algo extensa de todo lo ocurrido para tener la base sobre la cual apoyar lo que vamos a resolver.

El demandante promovente alega varios errores que se pueden condensar en uno, a saber: que las sentencias dictadas por el Tribunal de Distrito y el Tribunal Superior son con-

---

(²) No expresa la cuantía de las alegadas pérdidas.

trarias a la prueba y al derecho aplicable; a excepción del tercer error planteado, en el que se alega que el Tribunal Superior incidió al no resolver los errores planteados en el caso de la reconvención, ". . . dejando así a la parte demandante en completa obscuridad en cuanto al resultado de la apelación de ésta."

La prueba presentada ante el Tribunal de Distrito demuestra que José M. Toro era un comerciante de Utuado a quien el demandante Miguel H. Ortíz, h/n/c Frigorífico Miguel H. Ortíz, le vendía carnes; y que, le debía a éste la suma de $245.83 por concepto de carnes que le había vendido; que Toro le vendió a Quiles el negocio que tenía, mediante un contrato verbal. El Tribunal de Distrito determinó, como hechos probados que "de la prueba de la propia parte demandante aparece que el demandado nada debía al demandante y que éste ni siquiera lo conocía"; ([3]) y que "el codemandado y contra demandante Israel Quiles pagó aún cuando nada debía, para evitar el bochorno y la humillación que conlleva un embargo." ([4]) Pero lo cierto es que el propio demandado Israel Quiles, a través de su abogado, aceptó y reconoció que le debía la cuenta, cuando por carta del 30 de junio de 1969, firmada por su abogado Lcdo. Jorge Marín Báez, dirigida a Frigorífico Miguel H. Ortíz, en relación con el caso ante la Corte, le envía un cheque certificado para el saldo de la deuda, expresándose así: "A nombre y en representación de el señor Israel Quiles, de Utuado, Puerto Rico, les anexo giro (Register Check) número 258012 girado contra el Banco de Ponce con fecha 30 de junio de 1969, a vuestro favor, para el saldo de la deuda *que el señor Quiles tenía con ustedes,* cuya cuenta original figura a nombre de el señor José M. Toro." ([5]) (Bastardillas nuestras.)

([3]) Determinación de hecho número 8.

([4]) Determinación de hecho número 9.

([5]) Véanse el original marcado como folio 9 del expediente del Tribunal Superior elevado ante nos; y el referido cheque unido a dicho expediente marcado como folio 19.

La Regla 44.4 (a) de las de Procedimiento Civil de 1958 (32 L.P.R.A. Ap. II, R. 44.4 (a)) dispone que "las costas lo serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley. . . ." Y el inciso (d) de la misma Regla dispone que "en el caso que cualquier parte haya procedido con temeridad el Tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado."

La disposición de la anterior Regla sobre costas debe interpretarse en armonía con los otros preceptos legales aplicables.

La Ley de 1 de marzo de 1902, en su Art. 1, pág. 178 (Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 1069) establece:

"Toda persona que demandare en juicio el cumplimiento de una obligación, podrá obtener una resolución del tribunal que conociere la demanda, adoptando las medidas procedentes, según los casos, para asegurar la efectividad de la sentencia que haya de dictarse en el caso de prosperar la acción ejercitada."

Una disposición similar a la anterior se encuentra en la Regla 56.1 *et seq.* de las de Procedimiento Civil de 1958 (32 L.P.R.A. Ap. II, R 56.1 *et seq.*).

El Art. 2 de dicha Ley para Asegurar la Efectividad de la Sentencia, *supra*, (32 L.P.R.A. sec. 1070 (b)) dispone:

"(b) Si la obligación fuere de pagar una suma de dinero, el aseguramiento consistirá en el embargo de bienes bastantes del deudor para responder *de las sumas reclamadas.*" (Bastardillas nuestras.)

Y en su inciso (h) dispone:

"En lo no previsto en las reglas precedentes el tribunal discrecional y equitativamente adoptará las medidas procedentes para asegurar la efectividad de la sentencia."

Una lectura del caso citado por el demandante en su alegato ante el tribunal, de *Hermida y Palos* v. *Gestera*, 20

D.P.R. 452 (1914) (Wolf) hubiera evitado la necesidad de plantearse la interrogante que se planteó el ilustrado Juez Superior que copiamos anteriormente. ([6])

En el caso de *Hermida,* supra, en la moción solicitando aseguramiento de la efectividad de la sentencia se alegó que se había establecido acción en cobro de la suma de $800.00, intereses legales desde enero de 1908, más *$250.00 para honorarios de abogado, costas y gastos del juicio;* los demandantes pidieron al tribunal que dictara una orden de embargo contra los bienes del demandado en cantidad suficiente para responder de las sumas reclamadas, o sea, de los $800.00 del principal, sus intereses legales desde 1 de enero de 1968, más $250.00 para honorarios de abogado, las costas y gastos del juicio que se reclamaban en la demanda. El tribunal decretó el embargo solicitado mediante la prestación de una fianza que fue prestada. Entonces, por moción, los demandantes dieron instrucciones al Alguacil para que procediera al embargo de una finca del demandado, de conformidad con la orden de embargo, que se acompañó con dicha moción. En el mandamiento de embargo expedido por el Secretario al Alguacil, se ordenaba a éste que procediera a embargar la referida propiedad del demandado para cubrir la suma de principal reclamada y las costas. Dichos funcionario archivó en la Corte su certificado de diligenciamiento de dicho mandamiento en el cual expresaba que había embargado una finca perteneciente al demandado radicada en Puerta de Tierra. Y luego entregó un mandamiento al Registrador de la Propiedad, en el cual le informaba que había practicado dicho embargo sobre la finca, en cumplimiento de la orden de embargo de la Corte; y que éste se practicó para responder de la suma de $800.00 de capital, $284.00 para intereses y $250.00 para costas, gastos y honorarios de abogado. El Registrador procedió a hacer la anotación en sus libros.

---

([6]) Véase pág. 681 de esta Opinión *Per Curiam.*

Posteriormente el demandado radicó en corte una moción para levantar el embargo; solicitando del tribunal que dejara sin efecto el mismo y se ordenara su cancelación en el registro, por haber sido consignada en Corte, por el demandado, la suma de $800.00. El tribunal dictó una orden para que se dejara sin efecto el embargo y se cancelara en el registro en virtud de haberse consignado los $800.00 del principal.

Contra esa orden del tribunal se apeló antes nos. Después de hacer un análisis de la Ley para Asegurar la Efectividad de la Sentencia, este Tribunal procedió a revocar la orden apelada del tribunal de instancia; expresándose así:

"Parece que el apelado alega que la consignación de ochocientos dólares sustituye para todos los efectos cualquier reclamación de la demanda. De todos modos el apelado insiste en que ninguna de las secciones de la ley de marzo 1, 1902, autoriza un embargo para el cobro de intereses y honorarios de abogado.

Se alega incidentalmente que al proceder el márshal a hacer el embargo de toda la finca por la suma del capital, intereses, costas y honorarios se excedió en sus atribuciones, pero si examina la orden expedida por el secretario se verá que en ella se ordenó al márshal que embargara bienes suficientes a cubrir la suma de ochocientos dólares y costas, pero también se alude en ella a la suma reclamada en la demanda. Para ser más precisos el secretario debió haber incluído todas las sumas mencionadas en la solicitud o en la demanda, pero en la forma en que estaba no creemos que el márshal quedara limitado en sus facultades a la orden formal que se le entregó, cuando también esa orden hacía referencia a la demanda y habiendo además la corte concedido en su orden de diciembre 18, 1913 la moción sobre aseguramiento como en ella se solicitaba, en la cual se trataba de asegurar no solamente el capital sino también los intereses y honorarios. El secretario no se ajustó estrictamente a la orden de la corte pero no había absolutamente nada en su orden que limitara las facultades del márshal y éste estuvo suficientemente autorizado por virtud de la orden de la corte concediendo la moción de aseguramiento en la forma solicitada. Creemos que el embargo hecho por el márshal era suficiente a cubrir intereses y costas si es que dichos intereses y costas pueden ser cobrados

por medio de un embargo de conformidad con la ley de marzo 1, 1902.

.  .        •        •        •        •        •        •        •

En la moción de aseguramiento presentada por los demandantes solamente se hace mención específica del párrafo (b) de la sección 2 de la ley. Quizás si se considera técnicamente el párrafo (b) solamente comprende la suma del capital y los intereses y no los honorarios, pero nos inclinamos a creer que si bien el pago de honorarios es una cuestión discrecional en la corte, constituye sin embargo una obligación por parte de una persona de igual modo que cualquiera infracción de los derechos de otra persona puede hacer responsable a un demandado en una reclamación por daños y perjuicios que han sido o no liquidados. De cualquier modo la corte tenía discreción de acuerdo con el párrafo (h) para incluir casos que no han sido prescritos de modo específico en otras partes de la ley de marzo 1, 1902. La ley en su totalidad tiene por objeto proteger a los demandantes en cualquier reclamación que puedan tener contra el demandado y la reclamación de los honorarios en que han incurrido por haber tenido que acudir a la corte ha sido reconocida específicamente por la legislatura en la ley de 1908. Creemos que cuando se presenta a la corte la debida solicitud y se presta según sea el caso la correspondiente fianza, debe dicha corte dictar una orden de embargo que comprenda todas las sumas reclamadas en una demanda. En este caso la corte en realidad lo hizo así y el único error que se cometió fue el de haberse dejado sin efecto el embargo al hacerse la consignación por una suma menor que todas las reclamadas por los demandantes."

■ Es cierto que las costas, cuando se radicó la demanda en este caso, no habían sido determinadas por el tribunal, pues su imposición, mandatoria por ley, a favor de la parte que obtiene sentencia a su favor, dependía de que la demanda en este caso prosperara; pero no obstante, conforme a la ley sobre aseguramiento de sentencia, y a lo resuelto en el caso de *Hermida*, supra, el demandante tenía derecho a asegurar su cobro para el caso que se dictara sentencia a su favor; e igual situación ocurre en relación con la posible condena en

honorarios de abogado, si el tribuñal al dictar sentencia, consideraba que hubo temeridad de la parte demandada y concede una suma por tal concepto. El demandante también tiene derecho a asegurar el cobro de los honorarios que el tribunal imponga en el futuro, si discrecionalmente cree que debe imponerlos por temeridad.

Sería un gran negocio para los deudores no pagar sus deudas y esperar a que se les demande; y luego pagar el principal sin tener responsibilidad por las costas y honorarios a que obliguen a una parte a incurrir; y que no se pudiera asegurar el cobro también de las costas futuras y honorarios que se impongan; meramente porque al radicarse la demanda no se hubieren determinado o fijado todavía.

Es innecesario repetir aquí como el demandante, tanto en su demanda, como en la moción de aseguramiento fijó unas cantidades razonables para tales fines a ser asegurados, conjuntamente con el principal mediante el embargo decretado.

El demandado Quiles asume una posición contradictoria. En la carta de su abogado, referida anteriormente, expresa que envía el cheque ". . . para el saldo de la deuda que el señor Quiles tenía con ustedes, cuya cuenta original figura a nombre del señor José M. Toro"; reconociendo así que debía la suma reclamada; y luego alega que él nada debía al demandante y que si pagaba era para evitarse el bochorno y la humillación del embargo. Es claro que ésto es un subterfugio del demandado para tratar de crear una posible causa de acción futura por concepto de daños y perjuicios por un alegado embargo ilegal.

Conforme con esta segunda posición asumida por el demandado, radica una reconvención contra Ortíz reclamándole daños y perjuicios por el embargo, que alega era ilegal y nulo; y que le causó sufrimientos morales y materiales. Es elemental en derecho que no procedía dicha reconvención y que la misma no aducía causa de acción alguna. Independiente-

mente de que no merece crédito alguno [7] la alegación de que no debía nada al demandante y de que pagó para evitarse la alegada humillación y bochorno del embargo, después de la carta de su abogado donde reconoce que debe la deuda; la reconvención referida no aduce causa de acción ni podía proceder en ese momento, en derecho.

En *Martí* v. *Hernández,* 57 D.P.R. 819 (1940) (Travieso) resolvimos que en una causa de acción por embargo ilegal lo que el demandante tiene que alegar y probar es que sus bienes fueron embargados; que la acción que contra él se entabló y en la cual se decretó el embargo terminó por sentencia firme a su favor; y los daños sufridos; y que la persona embargada no puede entablar acción por el embargo mientras la sentencia dictada a su favor en el caso esté pendiente de ser revisada en apelación; y que su causa de acción en tal caso surge al confirmarse la sentencia en apelación. No hay duda que al instar su reconvención en el Tribunal de Distrito, el demandado Quiles no tenía una sentencia final y firme a su favor, ya que la misma se apeló al Tribunal Superior, y contra la sentencia de éste se trajo ante nosotros el *certiorari* que estamos resolviendo. (Véanse además: *Sorrentini y Cía.* v. *Méndez,* 76 D.P.R. 690 (1954) (Ortíz); y *Sosa* v. *Sucn. Morales,* 58 D.P.R. 360 (1941) (De Jesús).) Esta es la regla general prevaleciente en esta jurisdicción, salvo cuando median circunstancias extraordinarias como ocurrió en *Alum Torres* v. *Campos del Toro,* 89 D.P.R. 305 (1963) (Hernández Matos). Esas circunstancias extraordinarias no concurren en el presente caso. No obstante, independientemente de que procediera o no procediera alegar la reconvención en el caso de autos, lo cierto es que, dada la conclusión a que estamos

---

[7] Como dijo ilustrado Magistrado Señor Serrano Geyls, en *Pueblo* v. *Luciano Arroyo,* 83 D.P.R. 573 (cita precisa a la pág. 582 (1961) (Serrano Geyls)): "Los jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería." Véase también: *Román Montalvo* v. *Delgado Herrera,* 89 D.P.R. 428 (Blanco Lugo) (1963); cita precisa a la pág. 437.

llegando de que las sentencias del Tribunal de Distrito y del Tribunal Superior son erróneas y contrarias a la prueba y el derecho aplicables, la referida reconvención debió declararse sin lugar.

Estimamos que ambos tribunales cometieron los errores alegados por el peticionario en el *certiorari* ante nos.

Por los fundamentos expuestos *se revocan las sentencias dictadas por el Tribunal Superior, Sala de Arecibo, en 12 de abril de 1972; y la dictada por el Tribunal de Distrito, Sala de Utuado, en 7 de abril de 1970; y en su lugar se dicta sentencia declarando con lugar la demanda radicada y se condena al demandado Israel Quiles a pagar al demandante Miguel H. Ortíz, la suma reclamada de $245.83, con intereses legales correspondientes, más las costas incurridas por el demandante en ambos tribunales, más la suma de $300.00 por concepto de honorarios de abogado; y se declara sin lugar la reconvención radicada por el demandado contra el demandante.*