R. Muñiz de León & Co., S. en C., demandante y apelada, *v.* Melón Hnos. & Cía., S. en C., demandada y apelante.

Núm. 7723.—*Sometido:* Abril 25, 1939. *Resuelto:* Marzo 14, 1940.

*Angel A. Vázquez,* abogado de la apelante; *V. Polanco de Jesús,* abogado de la apelada.

EL ·JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

La demandada apela de una sentencia adversa en un pleito para recobrar daños provenientes de un embargo ilegal. La historia del caso del cual surgió la presente acción puede verse en *Melón Hnos. & Co., S. en C., v. R. Muñiz de León,* 47 D.P.R. 91, y en *Melón Hnos. & Co. v. R. Muñiz, etc., y Villamil, interventor,* 49 D.P.R. 703. La corte de distrito

declaró sin lugar una excepción previa de falta de hechos suficientes para determinar una causa de acción. Se señala esto como error. En su alegato la apelante dice que:

En ninguna de las tres causas de acción alegó la demandante malicia, falta de causa probable, mala fe, dolo, fraude o negligencia al trabar la demandada el embargo ilegal. En la primera causa de acción la demandante no alegó que ella se hubiera opuesto al embargo de su propiedad. En la segunda causa de acción la demandante no alegó que ella se hubiera opuesto al cierre de su negocio o que el mismo se hubiera llevado a cabo ilegalmente por la demandada. En la tercera causa de acción la demandante no alegó que ella hubiera pedido permiso para examinar los libros embargados y para sacar o para que se le entregase una lista de los deudores o las cantidades adeudadas a la demandante; o que la demandante hubiera tratado de cobrar esas deudas sin éxito. *Verdejo* v. *Sucrs. de Oliva & Co.*, 18 D.P.R. 103, 106.

■■ Como primera causa de acción la demandante alegó que:

El día 13 de diciembre de 1932 la demandante, traficante de mercería, era dueña de un establecimiento mercantil situado en la calle Palmer núm. 26, en Ciales, P. R. Ese día Melón Hnos. & Co., S. en C., acompañada del márshal de la Corte de Distrito de Arecibo—valiéndose de un mandamiento de embargo que había obtenido de la Corte de Distrito de San Juan el día anterior en el caso de Melón Hnos. & Co., S. en C., v. R. Muñiz de León, núm. 17,891—penetraron en el establecimiento mercantil expresado y embargaron todas las mercancías que la demandante tenía en dicho establecimiento, cerraron el mismo e impidieron que la demandante continuara su negocio, llevándose las llaves del establecimiento y anulando por completo el negocio de la demandante. Como resultado de ello se vió obligada la demandante entonces a recurrir a la Corte de Distrito de San Juan en el indicado caso en que se libró el mandamiento de embargo para obtener la disolución de éste—lo que se consiguió por sentencia de la Corte Suprema de Puerto Rico dictada en 26 de junio de 1934. Al amparo de dicho mandamiento de embargo, Melón Hnos. & Co. vendió en pública subasta y se apropió todos los bienes de la demandante sin pagar su importe a ésta. Dichos bienes y mercancías tenían un valor razonable de $3,400.50. Para obtener la nulidad de la orden de embargo la demandante tuvo que contratar los servicios de aboga-

dos a quienes pagó $600, además de $150 gastados en derechos judiciales y en viajes de testigos. La demandada no ha pagado estas sumas a la demandante.

Como segunda causa de acción, la demandante alegó, además de los hechos arriba expuestos, que:

La demandante desde hacía varios años tenía su negocio establecido en Ciales y el volumen del mismo alcanzaba anualmente la cantidad de $12,000, con crédito estable y firme y con beneficios líquidos de no menos de $2,000 anuales. La demandante se ha visto privada de dichos beneficios desde el día 13 de diciembre de 1932 hasta el día en que se radicó la demanda. Esta pérdida ascendía a $4,000. La demandada no le ha pagado esta cantidad.

Como tercera causa de acción la demandante alegó, además de los hechos arriba expresados, que:

En dicho día 13 de diciembre de 1932 la demandada Melón Hnos. & Co., S. en C., al penetrar con el márshal en el establecimiento mercantil de la demandante, se apoderó sin el consentimiento de ésta del sistema de libros de contabilidad que la demandante tenía en su establecimiento para registrar todas las transacciones y especialmente para anotar los nombres de todos sus deudores y la cantidad que cada persona le debía. Como la demandada cerró el establecimiento y dejó en él encerrados los libros de contabilidad y se apoderó y dispuso de ellos, impidió así que la demandante los utilizara para cobrar sus cuentas oportunamente, teniendo por resultado que con el transcurso del tiempo los deudores se han ausentado unos, y otros han venido a estado de insolvencia, y por este motivo la demandante ha sufrido daños ascendentes a la cantidad de $1,500.

Los hechos así alegados eran suficientes para demostrar que los daños habían sido causados por la culpa o negligencia de la demandada. No era necesario usar las palabras culpa o negligencia. *Societé Anonyme, etc.* v. *Vallés*, 46 D.P.R. 652. La acción se basaba en el artículo 1802 del Código Civil (edición de 1930). Ese artículo provee: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." No era necesario alegar malicia, falta de causa probable, mala fe o dolo.

La opinión en el caso de *Verdejo* v. *Sucrs. de Oliva & Co.*, supra, habla por sí misma. A falta de argumento alguno o de otra cita de autoridades no haremos ahora una investigación independiente de otras cuestiones relativas a la suficiencia de la demanda pero que no han sido desarrolladas adecuadamente en el alegato de la apelante.

█ Alega la apelante que la corte de distrito erró al dictar sentencia a favor de la demandante, quien no tenía capacidad legal para demandar.

La demandada alegó, por información y creencia, que desde antes de la presentación de la demanda la demandante cesó en sus obligaciones comerciales por vencimiento del término social. Luego la demandada admitió que la demandante en diciembre 13, 1932, era una sociedad mercantil en comandita, pero alegó como defensa que el término social de la demandante había expirado y como consecuencia la demandante había dejado de existir y había perdido su capacidad para demandar.

Asumiendo con la apelante que el término social de la demandante había expirado después del día del embargo ilegal y antes de radicarse esta demanda, estamos de acuerdo con la apelada que para los fines de ejercitar una demanda para recobrar daños causados por un acto torticero cometido antes de expirar el término debe considerarse que la sociedad demandante sigue existiendo aunque haya expirado su término. Sin perjuicio de volver a considerar esta cuestión en casos futuros así lo resolvemos. Véase artículo 147 del Código de Comercio (ed. de 1932); 2 Gay de Montellá, Código de Comercio 494, y casos citados; *Sucrs. de L. Villamil & Co., S. en C.* v. *Quintana,* 45 D.P.R. 929.

█ Otra contención es que la sentencia es contraria a la ley y que no está sostenida por la evidencia.

Los testigos de la demandante en lugar de declarar que se habían pagado $600 a los abogados como se había alegado en la demanda, declararon que dichos abogados le habían pasado una cuenta por $600 que no había sido pagada. Esa

cuenta fué por servicios profesionales prestados en el caso
en que se ordenó el embargo. No especificaba la cantidad
que se debía por obtener la disolución del embargo. El juez
de distrito tenía ante sí treinta y cuatro documentos del
récord en el caso de *Melón Hnos. & Co., S. en C.* v. *R. Muñiz
de León.* La sentencia recaída a favor de la demandante
incluía una partida de $200 como honorarios por obtener la
disolución del embargo. Había suficiente prueba para sos-
tener esta parte de la sentencia. El hecho de que el juez
de distrito teniendo los datos ante él estuviere en posición de
fraccionar los servicios prestados, es suficiente para distin-
guir el presente del caso de *Muriente* v. *Terrasa,* 22 D.P.R.
738, citado por el apelante.

Descansa también la apelante en el caso de *Sierra* v. *San-
tiago,* 48 D.P.R. 687 y en las autoridades allí citadas para
sostener la regla general de que el demandante en una acción
*ex delicto* no puede recobrar como un elemento de daños hono-
rarios de abogado por servicios prestados en otro pleito.
Conforme se dijo en el caso de Sierra, hay algunas excep-
ciones a la regla general.

En *Díaz* v. *García,* 47 D.P.R. 474, 480, esta corte dijo:

"El tercer señalamiento es que la corte de distrito cometió error
al justipreciar la cuantía de los daños y perjuicios. Una de las parti-
das alegadas en la demanda, establecida por la prueba y concedida
por la corte, fué la suma de $100 pagados por el demandante como
honorarios de abogado y gastos incurridos en sus gestiones como in-
terventor ante la corte municipal y en apelación para ante la corte
de distrito en el pleito iniciado por Francisco García contra Reyes
García. Se sostiene que no se concedieron honorarios de abogado
como costas en dicho pleito y que los mismos no pudieron ser con-
cedidos de acuerdo con el estatuto que rige la materia de costas, toda
vez que la suma en controversia era menor de $500. La conclusión es
que una parte a quien no se le han concedido las costas, incluyendo
honorarios de abogado y que no ha presentado memorándum de costas
en un pleito, no puede recobrar honorarios de abogado en una acción
independiente. La respuesta a esta argumentación es que el aquí
demandante no trataba de obtener honorarios de abogado como parte
de las costas que pudieron concederse o no como tales en otro pleito,

sino como daños y perjuicios causados por el proceder del demandado al ocultar o disponer de bienes embargados por el aquí demandante en el pleito iniciado por él contra Reyes García y puestos por el márshal bajo la custodia del demandado como depositario.''

En 5 Am. Jur. 212, sección 1014, leemos:

''El peso de las autoridades es que los gastos incurridos al defender un embargo ilegal o malicioso o un secuestro de bienes en poder de un tercero, a distinción del pleito en sus méritos, incluyendo una cantidad razonable para honorarios de abogado, constituye una partida propia de daños en una acción basada en un embargo ilegal o en un secuestro de bienes en poder de un tercero. La regla es aplicable ya esté la acción basada en una fianza o en un acto torticero por el embargo ilegal o secuestro. Los honorarios de abogado que se pueden recobrar están limitados a aquéllos que se han pagado o que se ha convenido pagar, y que son razonables. A veces un estatuto permite que se recobren estos gastos. El derecho a ello puede existir aunque la causa de acción del demandante sea justa, pues el embargo puede no obstante ser ilegal. Dentro del significado de las palabras 'costas' y 'gastos' están incluídos desembolsos hechos para obtener la nulidad del embargo y la devolución de la propiedad, y para conseguir testigos en la acción principal, y las costas técnicas de esa acción en apelación así como en la corte inferior.

''*     *     *     *     *     *     *

''En algunos casos los honorarios de abogado surgidos de un embargo ilegal no se conceden, siguiendo las cortes la regla general por la cual un litigante victorioso por lo regular no tiene derecho a recobrar tales honorarios, en ausencia de un estatuto especial o de una estipulación. Por lo menos se sigue la doctrina de que ésta es la regla cuando no hay prueba de que el embargo se llevó a cabo con malicia y sin causa probable.

''*     *     *     *     *     *     *

''Existe diversidad de opinión en cuanto a si se puede recobrar por servicios prestados en la corte de apelaciones. Sin embargo, si es necesario defenderse del embargo en la corte de apelaciones no parece que haya razón alguna para que honorarios de abogado por servicios rendidos en conexión con un embargo en esa corte lo mismo que en la corte inferior no deban incluirse como una partida de daños causados por el embargo ilegal, y las autoridades así lo han resuelto.''

Véanse también la monografía al caso de *St. Joseph Stockyards Co.* v. *Love* (Utah), 25 A.L.R. 569, 579, 580;

*Stumpf* v. *Pederson* (Okla.) 70 P. (2d) 101; *Taylor* v. *Wilbur* (Wash.), 16 P. 757.

No hallamos que se cometiera error alguno en aquella parte de la sentencia que concedió como daños y perjuicios la partida de $200 para cubrir la cantidad adeudada a los abogados de la demandante por sus servicios al obtener la disolución del embargo ilegal.

La corte de distrito incluyó en su sentencia una partida de $1,000, en vez de los $4,000 reclamados en la segunda causa de acción, como los beneficios netos que la demandante hubiera recibido al continuar en sus negocios de no habérsele ello impedido por el embargo ilegal. A nuestro juicio hubo suficiente prueba para establecer una pérdida de por lo menos $1,000.

En *Lowande* v. *Otero & Co.*, 15 D.P.R. 194, este Tribunal dijo:

"Los daños reales que se pueden exigir con motivo de una orden ilegal de embargo, son aquéllos que son el resultado o consecuencia natural, inmediata y legal del acto ilegal."

En *Muriente* v. *Terrasa et al.*, 22 D.P.R. 738, 746, dijimos:

"El artículo 1073 del Código Civil prescribe que la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, *sino también el de la ganancia que haya dejado de obtener el acreedor*.

"¿No es lógico concluir que si no hubiera sido por el embargo, el demandante hubiera continuado explotando su negocio y ganando lo mismo que ganaba? A nuestro juicio lo es, y, por tanto, estimamos que puede y debe tomarse como base para calcular la ganancia dejada de obtener por el demandante, la obtenida anteriormente en un período de tiempo igual, bajo idénticas circunstancias."

Véase también *Avilés* v. *Hijos de Rafael Toro, S. en C.*, 27 D.P.R. 671.

Indica la apelante que una semana más tarde un acreedor distinto trabó otro embargo. Se arguye que la corte de distrito debió haber tomado este hecho en consideración para mitigar los daños. La pérdida de beneficios por la deman-

dante hubiera sido sostenida como resultado del embargo ilegal aun si no hubiera habido un embargo posterior.

En 7 C. J. S. 661, sección 507, hallamos lo siguiente: (Bastardillas nuestras.)

"Se ha resuelto que cuando se embargan bienes a virtud de un mandamiento ilegal, la incautación posterior de los mismos en un procedimiento válido, ya sea mediante un segundo mandamiento de embargo o en un mandamiento de ejecución, y el aplicar los bienes así obtenidos al pago de la deuda del dueño sin su consentimiento, no puede alegarse como defensa o para mitigar los daños y perjuicios por el embargo ilegal; y esta regla no es alterada por el hecho de que se ofreciera devolver los bienes al averiguarse que el primer embargo era nulo; aunque de acuerdo con algunas autoridades, la regla no es tan estricta y el hecho de que el demandante hiciera que se practicara un embargo válido puede alegarse para mitigar los daños. Cuando por razón del acto ilegal de una persona se toman determinados bienes, su incautación posterior en un procedimiento expedido a favor de otra persona y en contra del dueño, y a *virtud del cual dichos bienes se aplican al pago de la deuda,* es una circunstancia que puede ser recibida para mitigar la responsabilidad de la persona que causó los daños. Si los bienes han sido devueltos y están siendo retenidos por el dueño, ello es algo que puede demostrarse también para mitigar los daños, mas no para impedir la acción por el mal causado."

En *Wehle* v. *Butler,* 61 N. Y. 245, encontramos el siguiente *dictum:*

"Las cortes han considerado hasta qué punto bienes ilegalmente tomados y posteriormente embargados y vendidos en un recurso instado por un tercero, que era acreedor del dueño, podrían ser utilizados como defensa en un pleito para reclamar daños y perjuicios. Se ha decidido que si la persona que causó los daños no estaba en connivencia con el tercero, el hecho de la incautación por parte de esta tercera persona podría ser utilizado para mitigar los daños. (Autoridades.) Mas cuando la persona que se incauta de los bienes ilegalmente hace que éstos sean nuevamente embargados y vendidos en un procedimiento instruído a su favor, ello no le protege en absoluto y en este caso esa cuestión surgió con suficiente claridad."

En *Wehle* v. *Spelman,* 25 Hun. (N.Y.) 99, la corte dijo:

"Cuando por razón del acto ilegal de una persona determinados bienes son confiscados, la incautación posterior de éstos en un re-

curso iniciado por otro contra el dueño y en el cual dichos bienes son vendidos para pagar la deuda, es una circunstancia que de ordinario puede ser considerada para mitigar la responsabilidad de la persona que causó tales daños. Pero para que se le dé ese efecto es requisito esencial que la persona a cuyo nombre se haga la incautación no esté confabulada con la que causó los daños o haya participado con ella en la comisión del daño original.

"En el presente caso las otras firmas actuaron en confabulación con los demandados al incautarse y apropiarse indebidamente de los bienes de la demandante. Ellas eran tan culpables como las partes contra quienes se ha presentado la demanda para recobrar el valor de la propiedad. Por ese motivo los embargos posteriormente obtenidos por ellas bajo los cuales los bienes fueron nuevamente confiscados, no pueden legalmente tener efecto alguno sobre la responsabilidad de los demandados. (Autoridades.) Éstos no se hallaban en situación que pudieran mitigar el límite de su responsabilidad, demostrando que había habido una incautación o apropiación posterior de los bienes de la demandante. Nunca fueron devueltos a poder de ésta una vez que los mismos salieron de su posesión por el acto ilegal de aquéllos que actuaban de común acuerdo. Una vez ocurrido esto esas personas respondían de su valor, y la demandante podía optar por demandar a parte de ellos o a todos, conforme deseare, y nada de lo que ellos pudieran más tarde realizar podría eximirles de la responsabilidad proveniente de su actuación original."

En una nota puesta al caso de *Tisdale* v. *Major*, (Iowa) 68 Am. St. Rep. 263, 276, leemos:

". . . pero si a virtud de un mandamiento ilegal determinados bienes son confiscados, puede demostrarse en el correspondiente pleito —instado después de haberse anulado el embargo—para recobrar los daños y perjuicios causados con dicho embargo, que los mismos bienes fueron posteriormente confiscados en un procedimiento válido expedido a favor de otro acreedor del dueño y aplicados al pago de su deuda. *Wehle* v. *Spelman*, 25 Hun. 99; *Beyersdorf* v. *Sump*, 39 Minn. 495."

En esos casos más antiguos la acción entablada era generalmente para recobrar daños y perjuicios por la apropiación ilegal de propiedad mueble *(conversion)*. El presente recurso ha sido iniciado a tenor del artículo 1802 del Código Civil. Esto sugiere la regla que prevalece en los casos de causas concurrentes. Véase Bohlen & Harper on Torts 253, sección

109; 2 Restatement of the Law of Torts 1161, sección 432; un luminoso artículo por el Juez Peaslee de N. H. titulado "Multiple Causation and Damage", 47 Harvard Law Review 1127. Mencionamos este aspecto del caso tan sólo para indicar que el mismo no ha sido pasado por alto y que mayor luz sobre la materia en casos futuros será bien recibida por este tribunal.

No es éste un caso de torticeros comunes. Tampoco es el caso de un acreedor que demanda a su deudor y embarga los bienes de un tercero. En el caso de autos el dueño de los bienes ilegalmente embargados era el verdadero deudor. El acreedor, por inadvertencia o equivocación, en vez de designar al demandado como verdadero deudor—sociedad en comandita—nombró a uno de los socios, obtuvo un mandamiento de embargo y embargó bienes de la sociedad como pertenecientes al socio erróneamente designado como demandado. No hubo colusión entre el acreedor y otra persona que embargó los mismos bienes una semana más tarde. En realidad el acreedor últimamente mencionado estaba representado por uno de los letrados que representaban al dueño de los bienes ilegalmente embargados al obtener la disolución del primer embargo, y ese abogado aún representa al dueño como demandante en este recurso. Nuestra conclusión es que el juez de distrito debió haber considerado el segundo embargo para mitigar los daños sufridos por razón de la pérdida de beneficios netos; y la partida de $1,000 concedida en concepto de tales daños será reducida a $500.

En apoyo de la contención de que la demandante, al exponer la segunda causa de acción, supra, debió haber alegado —y probado durante el juicio—malicia, falta de causa probable, dolo y mala fe, la apelante cita: *Acevedo* v. *Orr*, 100 Cal. 293; *Lacey* v. *Baudry*, 53 Cal. 693; 3 Bancroft's Code Pleading 2575; 4 Bancroft's Code Practice and Remedies 4687; 2 R. C. L. 896, secciones 111, 113, 117 y 121; 6 C. J. 493 *et seq; Hoffman* v. *Cuadrado*, 14 D.P.R. 597 y *Paniagua* v. *Sobrinos de Ezquiaga*, 14 D.P.R. 820.

La corte en los dos casos de California y Bancroft en las dos secciones citadas por la apelante discutían la necesidad de alegar y probar malicia en acciones para recobrar daños y perjuicios producidos por *injunctions* erróneamente expedidos. En su sección 2465 Bancroft's Code Pleading dice lo siguiente sobre embargos ilegales:

"De acuerdo con muchas autoridades, en ausencia de un estatuto que lo permita, no puede entablarse una acción por un embargo ilegal a no ser contra la fianza, a menos que se aleguen y prueben malicia y falta de causa probable. En este último caso la acción es en efecto una por persecución maliciosa y se rige por las mismas reglas. Empero, algunas cortes reconocen el derecho a demandar por el embargo ilegal independientemente de la fianza o de la malicia y falta de causa probable. Doquiera prevalece esa regla no es menester alegar malicia ni falta de causa probable ni la terminación de la acción principal, a fin de recobrar los daños efectivamente sufridos. Pero si han de recobrarse daños punitivos, debe alegarse tanto malicia como falta de causa probable."

Las secciones de Corpus Juris y de Ruling Case Law citadas por la apelante se pronuncian más o menos en el mismo sentido.

Ninguna de las autoridades citadas resuelven que la alegación y prueba de malicia, falta de causa probable, mala fe o dolo es requerida en una acción entablada de conformidad con un estatuto similar al artículo 1802 del Código Civil para recobrar los daños materiales causados por el embargo ilegal. *Rivera v. D. E. Cintrón, S. en C.,* 24 D.P.R. 334; *González Clemente & Cía. v. López et al.,* 32 D.P.R. 897.

■ La sentencia incluía una partida de $600 en vez de los $1,500 reclamados en la tercera causa de acción.

. Los libros mismos nunca fueron embargados como tales. Éstos se hallaban guardados en una caja de seguridad que fué embargada y tasada en la suma de $25 en el inventario del márshal. Esta caja de seguridad, en unión a otros bienes embargados, permaneció en Ciales durante muchos meses. Cuando la Corte de Distrito de San Juan como un año más

tarde ordenó que se trasladaran a San Juan los bienes embargados que quedaron en Ciales, el depositario de los mismos informó que según la información suministrádale por uno de los socios los libros se hallaban en la caja de seguridad; pero este socio, que tenía la combinación de la caja, se negó a abrirla y nadie más la sabía. La demandante nunca trató de readquirir la posesión de los libros ni solicitó el privilegio de examinarlos. Los testigos de la demandante no tuvieron dificultad en designar los deudores por sus nombres y la cantidad aproximada debida por cada uno de ellos. Sin embargo, la demandante no hizo esfuerzo alguno por cobrar ninguna de esas deudas. Asumiendo la suficiencia de los hechos expuestos en la tercera causa de acción—sobre lo cual véase 2 Joyce on Damages, 1254, sección 1095 y *Goodbar* v. *Lindsley*, (Ark.) 11 S. W. 577—convenimos con la apelante en que la prueba fué insuficiente para sostener la concesión de $600 en concepto de daños y perjuicios provenientes de la imposibilidad en que se hallaba la demandante para cobrar las cuentas en descubierto.

■ Otra contención es que la corte de distrito cometió error al conceder daños y perjuicios no obstante el hecho de que la demandada alegó y probó que el embargo en cuestión había sido admitido, confirmado y convalidado por los actos posteriores de la demandante y que por ello la demandante estaba impedida de reclamar daños y perjuicios con motivo de tal embargo.

La única autoridad citada en apoyo de esta contención es 6 C. J. 433, sección 1004. El alegato de la apelante asume, mas deja de demostrar, que los actos posteriores de la demandante equivalían a una renuncia. Fuera de cualquier cuestión de *res judicata* el argumento de la apelante—suponiendo que una pregunta y su respuesta puedan ser consideradas como argumentación—deja de convencernos de que hubiera una renuncia.

Convenimos con la apelante en que no debieron concederse costas y honorarios de abogado a la demandante.

La contención final de la apelante es que la corte de distrito cometió error al declarar sin lugar la moción de reconsideración de la demandada y la moción de nuevo juicio. La consideración ulterior de las cuestiones envueltas no sería de ningún provecho.

*La sentencia apelada debe ser modificada, eliminando de ella la concesión de costas y honorarios de abogado y reduciendo la cuantía de la misma de $1,800 a $700, y, así modificada, confirmada.*

El Juez Asociado Sr. De Jesús no intervino.