FRESH-O-BAKING Co., INC., ETC., demandante y recurrente, *v.* MOLINOS DE PUERTO RICO, INC. y DAFCO CREDIT BUREAU, INC., demandados y recurridos.

*Número:* R-71-131      *Resuelto:* 7 de marzo de 1975

510

*José M. Saliceti* y *Hernan W. Colberg,* abogados del recurrente; *Trías & Francis* y *Juan F. Doval,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Expedimos auto de revisión a solicitud de los demandantes corporación Fresh-O-Baking Co., Inc. y Ruy F. Delgado para examinar la sentencia que declaró sin lugar la reclamación en daños y perjuicios interpuesta contra Molinos de Puerto Rico y Dafco Credit Bureau por motivo de un embargo ilegal.

Resulta necesario una síntesis cronológica de los trámites y hechos relacionados con esta reclamación según el dictamen del tribunal sentenciador, confirmado y ampliado por nuestro examen de los autos originales y las transcripciones de evidencia.

El viernes 7 de mayo de 1965 la recurrida Molinos de Puerto Rico, Inc., en lo sucesivo denominada *Molinos,* a través de la agencia de cobro Dafco Credit Bureau presentó en el

Tribunal Superior, Sala de Caguas, bajo el número 65-2044 una demanda en cobro de dinero([1]) contra "Francisco M. Mattei Baerga h/n/c Fresh-O-Baking". La entidad corporativa Fresh-O-Baking Co., Inc., de la cual el Sr. Mattei era su accionista principal y administrador, se dedicaba al negocio de panadería y repostería en un local de su propiedad ubicado en el pueblo de Adjuntas que no cumplía con las normas reglamentarias sobre condiciones sanitarias aprobadas por el Departamento de Salud y cuyo estado físico era deplorable; ([2])

---

([1]) La suma reclamada era de $3,475.00 por mercancía comprada y no pagada y $1,200.00 en concepto de costas, y honorarios de abogado. No existe controversia de que la corporación Fresh-O-Baking Co., Inc., adeudaba en aquel momento lo reclamado. (T.E. pág. 71 de fecha 27 de mayo de 1970.)

([2]) Al 18 de marzo de 1965, cincuenta (50) días antes del embargo, se habían consignado como violaciones al Reglamento de Salud Número 73 (24 R.&R.P.R. sec. 850–1 et seq.) las siguientes:

*Edificio:* No está a prueba de ratas; los pisos y paredes interiores no son de material impermeable; no hay facilidad de desague y carece de luz reglamentaria.

*Local para el Despacho de Pan:* No está a prueba de moscas o sabandijas; los pisos, paredes y cielo raso no se conservan limpios; las mesas carecen de superficie forrada de material absorbente.

*Local de Elaboración de Harina:* No está a prueba de moscas; los pisos, paredes, cielo raso, maquinaria, utensilios y equipo no se conservan limpios.

*Almacén:* No está a prueba de moscas, cucarachas y otras sabandijas; y la harina y demás ingredientes no se almacenan en plataformas o borriquetes.

*Servicio Sanitario:* La puerta conecta directa al local de la panadería; no está a prueba de moscas, ratas y otras sabandijas; no hay lavabo, papel toalla ni jabón.

*Local para Aseo de Empleados:* No está dotado de ducha y no se mantiene limpio ni en buen estado de conservación.

*Lavado y Esterilización de Equipo:* Los paños no se conservan limpios ni en buen estado de uso.

*Casos Misceláneos:* La leña no se mantiene en borriquetes y ordenada; los alrededores no se conservan limpios y las aguas están dispersadas; las basuras no se despositan en zafacones con tapas de buen ajuste; las ventanas y puertas tienen tablas apolilladas; el edificio está falto de pintura en su interior y exterior; hay cachibaches y otros equipos ajenos a la elaboración del producto; no hay ventilación natural; todos los empleados carecen de certificados de buena salud, no usan ropa limpia ni adecuada ni observan buenos hábitos de aseo e higiene.

situación que existía desde el mes de febrero de 1964 y continuó posteriormente según las visitas de los inspectores correspondientes hasta el embargo y clausura. En estructura aparte el recurrente Ruy F. Delgado tenía guardado, bajo depósito gratuito con el señor Mattei, cierto equipo de laboratorio y notas de estudios por él realizados y también tenía equipo de su propiedad que se utilizaba en la panadería.

Concurrente con la radicación de la demanda, previa prestación de fianza, *Molinos* obtuvo una orden de embargo preventivo que diligenció sobre diversos bienes consistentes de $49.45 en efectivo, una guagua V.W., año 1960, maquinaria usada en la elaboración de pan y equipo de oficina. El alguacil, por instrucciones expresas del depositario de la demandante, señor Fernando García de la Noceda, procedió a clausurar el negocio instalando candados nuevos cuyas llaves conservó. Como consecuencia del embargo, las labores que allí se efectuaban fueron interrumpidas, y todos los productos e ingredientes perecederos para la confección de pan quedaron dentro del local. El señor Mattei Baerga no se encontraba en dicho momento ni se personó al lugar no obstante habérsele cursado notificación del embargo por conducto de uno de sus empleados y encontratarse a una distancia cercana. El local anexo, con entrada independiente en que el recurrente Delgado tenía sus bienes no fue objeto del embargo.

Así las cosas, el demandado Mattei en unión a su abogado compareció el lunes 10 de mayo a las oficinas del alguacil del tribunal donde fue emplazado y notificado oficialmente de tales gestiones. Con fecha 14 de mayo de 1965 el caso fue trasladado y radicado con el número 65-2476 en el Tribunal Superior, Sala de Ponce. Mattei contestó la demanda formulando una reconvención en daños y perjuicios por la suma de $1,500.00 basada en que la deuda no era personal sino corporativa y de que le habían sido ilegalmente embargados varios bienes de su propiedad personal. De este modo quedó trabada la contienda en dicho caso. Mediante orden del tribunal sobre

entrega de libros de contabilidad para usarse en otro proceso, en 18 de mayo de 1966 el señor Mattei, su abogado y un alguacil se personaron al local y notaron que había sido objeto de vandalismo por terceras personas, hecho que le fue notificado al recurrente Delgado.

Por inactividad de las partes, se dictó sentencia de archivo bajo la Regla 11 de las de Administración el 23 de diciembre de 1966, la cual oportunamente se convirtió en final y firme. ([3])

El 5 de mayo de 1966, Fresh-O-Baking Co. radicó bajo el número 66-1402 una demanda de daños y perjuicios contra Molinos, Dafco y el depositario Fernando García de la Noceda, fundada en embargo ilegal y clausura indebida del negocio, reclamando más de $65,000.00 por diversos conceptos. La misma fue desestimada *sin perjuicio* mediante sentencia de 26 de junio de 1967 por el fundamento de ser prematura al no haberse resuelto todavía el pleito original que motivó el embargo. Al igual que el otro caso, este dictamen se convirtió en final y firme.

En 13 de octubre de 1967 se radicó la acción de daños y perjuicios que nos ocupa ante el Tribunal Superior, Sala de Ponce, subsiguientemente trasladada y ventilada en la Sala de Caguas.

En ningún momento se instó por las partes recurrentes recurso independiente de tercería ([4]) o solicitaron reducción, levantamiento de embargo u otra medida siendo únicas las diligencias judiciales previamente mencionadas.

([3]) Las únicas otras incidencias que revelan los autos originales del referido caso son una resolución de 27 de febrero de *1968* ordenándose al depositario de los bienes entregar los artículos embargados al demandado Sr. Mattei, y una orden de remisión de tales autos al Tribunal Superior, Sala de Caguas en 21 de noviembre de 1968, a los fines de presentarse como evidencia en el caso que nos ocupa.

([4]) En *Rona Electric Co.* v. *Garriga*, 99 D.P.R. 942, 949 (1971), señalamos el carácter rápido y sencillo del procedimiento de tercería cuyo fin es determinar ". . . si los bienes muebles que se han embargado como de determinada persona le pertenecen a otra que los reclama como suyos."

Contra la sentencia desestimatoria del tribunal de instancia—basada en la aplicación de las defensas de cosa juzgada y prescripción, ausencia de nexo causal y la doctrina del deber de minimizar daños—los recurrentes apuntan y discuten siete (7) errores que pasaremos a analizar, separando en nuestra exposición los méritos de las dos causas de acción.

## I

*Reclamación de Fresh-O-Baking Co., Inc.*

Concluimos que incurrió en error el tribunal a quo al aplicar la doctrina de cosa juzgada y la defensa de prescripción a dicha entidad.

El trasfondo de hechos expuestos demuestra que en el caso primitivo número 65-2044 en cobro de dinero, Mattei formuló una reconvención en daños y perjuicios contra la allí promovente Molinos en su capacidad individual no corporativa, por alegadamente haberse embargado propiedad de su pertenencia. En consecuencia, no podía dársele efectividad a la defensa de cosa juzgada en orden a la sentencia en dicho caso por estar ausente el requisito de identidad de parte. *Mercado Riera* v. *Mercado Riera*, 100 D.P.R. 940, 950–951 (1972); *Isaac Sánchez* v. *Universal C.I.T. Credit*, 95 D.P.R. 372, 382 (1967); *Sucn. Zayas Berríos* v. *Berríos*, 90 D.P.R. 551, 564 (1964); *Rodríguez* v. *Sucn. Pirazzi*, 89 D.P.R. 506, 519 (1963). Tampoco procedía tal defensa por razón de la sentencia de desestimación dictada en el caso número 66-1402 en que la recurrente demandó a Molinos, pues la misma fue dictada *sin perjuicio*, excluyendo tal disposición judicial, por naturaleza su aplicabilidad. Además, operaba como impedimento el fundamento de dicha sentencia basada en que la causa de acción por embargo era prematura por no haber finalizado el pleito primitivo. *Fels* v. *Biascoechea*, 77 D.P.R. 681, 685 (1954).

Respecto a la defensa de prescripción, la sala sentenciadora se expresó del modo siguiente:

"Fuera de la pérdida alegada por el no uso de la maquinaria a las actividades a que se dedicaba, cuya pérdida se ha determinado, no es recobrable por la razón indicada; solo hay la pérdida por concepto del deterioro de la harina el aceite y la manteca cuyo valor determinó el Tribunal en $300. Empero, por razón de la prescripción, Art. 1869 del Código Civil, tal reclamación no puede prosperar. Esta causa de acción no es propiamente una por embargo ilegal. La pérdida de harina, manteca y aceite se debió a que la demandada no tomó las medidas necesarias para evitar su pérdida o deterioro. Nace de la ausencia de diligencia en el cumplimiento de un deber legal que tenía para con la dueña de dichos bienes perecederos. Es por ello que es una acción que nace al no actuar el embargante como debió y por ende, nació al realizarse el acto de cerrarse el local y cae bajo los artículos 1802 y siguientes. Por ello, está prescrita bajo el artículo 1869 del Código Civil, la acción para reclamar esta partida."

Bajo la tesis correcta de que la acción referente a la partida de alimentos perecederos nació al momento de efectuarse el embargo, 7 de mayo de 1965, parecería estar prescrita la misma, ya que al radicarse el caso que nos ocupa el 13 de octubre de 1967 habían transcurrido más de dos años. Ello estaría en consonancia con nuestra doctrina jurisprudencial que caracteriza la causa de acción para recobrar daños y perjuicios por embargo ilegal[5] como una de naturaleza *ex delicto* cuyo entronque es el Art. 1802 del Código Civil (31 L.P.R.A. Sec. 5141) ; *Berríos* v. *International Gen. Electric,* 88 D.P.R. 109, 117 (1963) ; *Méndez* v. *E. Solé & Co.,* 62 D.P.R. 835, 839 (1944) ; *R. Muñiz de León & Co.* v. *Melón Hnos. & Cía.,* 56 D.P.R. 330, 333 (1940) ; y que prescribe al año. *De la Matta* v. *Carreras,* 92 D.P.R. 85, 97 (1965).

■ Sin embargo, ni las partes ni el tribunal recurrido se percataron que la demanda de daños y perjuicios presen-

---

[5] Si bien la regla general exige que se alegue y demuestre que los bienes fueron realmente embargados y que la acción que motivó tal medida finalizó a favor del demandado original, hemos reconocido excepciones en casos cuyas circunstancias son verdaderamente extraordinarias. *Frigorífico M. H. Ortiz* v. *Quiles,* 101 D.P.R. 676; *Alum Torres* v. *Campos del Toro,* 89 D.P.R. 305 (1963).

tada por la entidad recurrente el 5 de marzo de 1966 en el caso 66–1402 interrumpió el término de prescripción extintivo de un año; circunstancia que prevaleció hasta el 26 de junio de 1967, fecha en que se dictó la sentencia desestimatoria sin perjuicio. De esa forma, el período prescriptivo quedó suspendido durante todo el tiempo que dicha acción estuvo sujeta a una adjudicación judicial, no militando en contra el que la acción fuera desestimada. Mientras estuvo pendiente mantuvo vivo y latente el derecho de dicha parte interrumpiendo efectivamente el término prescriptivo. *Moa* v. *E.L.A.*, 100 D.P.R. 573, 590–591 (1972); *Feliciano* v. *A.A.A.*, 93 D.P.R. 655, 659–661 (1966). Consecuencia lógica, la acción ante nos radicada en primera instancia el 13 de octubre de 1967 fue oportunamente presentada siendo compensable la partida de $300.00 correspondiente a la pérdida de productos perecederos reconocida en la sentencia.

Los demás errores señalados en cuanto a la entidad recurrente se contraen al haber el tribunal sentenciador denegado compensación por beneficios dejados de obtener con motivo del cierre del establecimiento y por la desaparición de maquinaria y la negativa además de ordenar la devolución de ciertos bienes embargados que fueron entregados al depositario judicial.

■ El análisis de la prueba desfilada y el derecho aplicable impiden que reconozcamos compensación, en las circunstancias del caso, por beneficios y ganancias dejadas de percibir. La ilicitud del negocio de la recurrente operando el mismo en condiciones antihigiénicas constituye jurídicamente un obstáculo infranqueable para ello. No es sólido su argumento de que la clausura prematura del negocio por el embargo, le impidió posteriormente el efectuar reparaciones para superar las deficiencias higiénicas. El récord revela que el cierre y la paralización del establecimiento era un hecho indefectible que el embargo meramente anticipó por varios días. Las violacio-

nes a la reglamentación de salud pública eran cualitativa y cuantitativamente de tal naturaleza que solamente reparaciones mayores e inversiones sustanciales económicas podían haberlo evitado. Nos preguntamos: ¿Si durante los meses anteriores no se adoptaron medidas correctivas de tales deficiencias, cómo puede sostenerse que las mismas se iban a realizar de no haber mediado el embargo? ¿Si la corporación no había pagado a Molinos la deuda válida pre-existente, ni posteriormente levantó el embargo por alegadamente carecer de recursos económicos, cómo puede argumentar que el cierre judicial impidió tales reparaciones? La conclusión lógica que evidencian los autos a estas interrogantes, es que la corporación nada hizo con motivo del embargo, pues el desenlace inevitable era la paralización y clausura del negocio por razones de salud pública, optando más bien por especular en daños y perjuicios con motivo del error procesal cometido por Molinos.

Respecto a los errores relacionados con la pérdida, desaparición y deterioro del equipo embargado que quedó bajo la custodia del depositario judicial, estimamos que los mismos fueron cometidos y que con sujeción a las normas jurídicas más adelante expuestas, procede se otorgue compensación a la recurrente. Analicemos los fundamentos en apoyo de esta conclusión.

La prueba refleja que únicamente la suma de $49.45 bajo custodia del alguacil fue devuelta a la recurrente, quedando los restantes bienes y objetos embargados bajo el cuidado del depositario judicial seleccionado por Molinos, quien optó por cerrar físicamente el negocio dejando en su interior los bienes corporativos que subsiguientemente, con el transcurso del tiempo fueron objeto de actos vandálicos y experimentaron deterioro. Sobre el estado, condición y valor de los mismos, en ausencia de determinación del tribunal a quo, y sin que ello implique variación en la norma de abstención judicial como tribunal apelativo, la prueba testifical y documental nos

permite precisar un valor aproximado total de $10,575.00 al momento de efectuarse el embargo. (⁶)

No obstante, la interacción y aplicabilidad de varias normas jurídicas más adelante expuestas, si bien no derrotan totalmente la causa de acción de la recurrente, no nos permite reconocer la suma antes consignada en toda su extensión. Preciso es apuntar tales normas para fines no sólo del caso de autos, sino ilustrativos en una sociedad como la nuestra en que el derecho vigente reconoce el mecanismo de embargo preventivo para asegurar la efectividad de una sentencia futura.

---

(⁶) Del estudio de las transcripciones correspondientes y las fotografías admitidas, hemos concluido la valoración estimada previa la depreciación que consideramos razonable, la cual se desglosa del siguiente modo:

| Descripción | Año y Costo | Depreciación | Valoración Judicial al momento de embargo |
|---|---|---|---|
| Guagua VW | 1960—$3,000.00 | $2,000.00 | $ 1,000.00 |
| Máquina sumar Comptograph | 1962—$ 100.00 | $ 75.00 | $ 25.00 |
| Dos Hornos "C" Doble | 1959—$5,000.00 c/u | $3,000.00 c/u | $ 2,000.00 c/u |
| Máquina removedora | 1953—$2,000.00 | $1,600.00 | $ 400.00 |
| Torno | 1953—$2,300.00 | $2,000.00 | $ 300.00 |
| Pesadora | 1953—$3,000.00 | $1,800.00 | $ 1,200.00 |
| Boleadora | 1953—$3,000.00 | $2,000.00 | $ 1,000.00 |
| Moleadora | 1953—$3,800.00 | $2,000.00 | $ 1,800.00 |
| Dos rebanadoras | 1953—$ 500.00 c/u | $ 250.00 c/u | $ 250.00 c/u |
| Compresor | 1953—$ 300.00 | $ 200.00 | $ 100.00 |
| Botelleros | 1953—$ 500.00 | $ 250.00 | $ 250.00 |

$10,575.00

No hay prueba para evaluar una maquinilla usada *Underwood* (T.E. pág. 48); una caja fuerte antigua (T.E. pág. 46) ni el equipo misceláneo. En ausencia de prueba precisa hemos tomado el año 1953 como fecha de adquisición de tales objetos.

Resulta improcedente adjudicarle a la entidad recurrente compensación por una máquina de sumar *Odhner,* una maquinilla *Torpedo* y escritorio y silla por pertenecer los mismos al Sr. Mattei. (T.E. págs. 92–93.) Igualmente en cuanto a unos archivos de metal por ser éstos propiedad del Sr. Ruy Delgado. (T.E. pág. 48.)

█ El embargo de bienes es una medida realista y necesaria consagrada procesalmente en nuestra Regla 56 de Procedimiento Civil encaminada a preservar la capacidad económica de un deudor y, en consecuencia permitir a un acreedor en última instancia vindicar su derecho. Esta regla provee un balance delicado e impone sobre los tribunales el deber de velar sobre la razonabilidad del remedio sobre todas las partes y representa ". . . la garantía máxima de corrección y resguardo de los derechos del deudor. . . ." *Domínguez Talavera* v. *Tribunal Superior*, 102 D.P.R. 423 (1974). Tal protección, en casos de reclamaciones no evidenciadas por documentos públicos o privados debidamente autenticados o por sentencia judicial, exige la prestación de una fianza para garantizar posibles daños y perjuicios. Reconoce al deudor el derecho a disolver el embargo y retener los bienes mediante prestación de fianza. Si bien la realización y consumación del embargo está bajo la tutela de los tribunales representado por el alguacil, la descripción y señalamiento de bienes, y de ordinario la custodia, recae sobre la parte promovente y el depositario judicial designado por el tribunal a solicitud de ésta última. *Carlo* v. *Corte*, 58 D.P.R. 889, 895 (1941); *Clausells* v. *Salas*, 50 D.P.R. 553 (1936); *Dávila* v. *Rosa*, 61 D.P.R. 608 (1943); *Cooperativa Central* v. *Flores*, 68 D.P.R. 726 (1948). El depositario judicial tiene bajo su responsabilidad la custodia de los bienes embargados, viniendo obligado a cumplir respecto de ellos, todas las obligaciones de un buen padre de familia conforme el Art. 1688 del Código Civil (31 L.P.R.A. sec. 4714). Ello implica que el depositario y el acreedor de mediar pérdida, deterioro indebido, o de no prevalecer este último en su reclamación, responden de los daños y perjuicios que ocurran en tal gestión.

█ Usualmente el alguacil y el depositario designado están llamados a realizar el embargo con sujeción a los bienes mencionados en el señalamiento y orden, careciendo ambos de facultad para tomarse la iniciativa de ordenar el cierre de un

local. Sólo una orden expresa del tribunal o aquella implícita que reconocemos emana cuando los bienes en cuestión están adheridos al mismo y cuya remoción razonablemente causaría deterioro y daños, o implica el que se tenga que incurrir en gastos sustanciales desproporcionados a la reclamación, constituyen las excepciones a tal regla, pues la eficacia de la providencia judicial requiere la clausura del local para evitar que el demandado tenga acceso y posesión de los bienes objeto del embargo, haciendo fútil e inoperante el embargo: *Carlo* v. *Corte*, supra, págs. 896–897.

En el caso que nos ocupa, resulta evidente que la clausura del local fue una gestión válida y necesaria para darle virtualidad a la orden del tribunal pues la mayoría de los bienes y equipo señalados estaban adheridos (T.E. pág. 101) y todo indica que el tamaño y peso de los mismos no aconsejaban su remoción.

La fluidez situacional que el diligenciamiento de un embargo conlleva y la dificultad de precisar en el momento los valores exactos de los bienes especificados es razón de que exista la norma de derecho general de que un embargo no se convierte en ilegal por ser excesivo. *Ramery Vélez* v. *Banco Popular*, 90 D.P.R. 274, 280 (1964) ; *Carlo* v. *Corte*, supra, pág. 897. De ello ocurrir, el remedio es uno sencillo y de fácil acceso: solicitud de reducción del embargo trabado.

▆▆▆ De relevancia a la controversia jurídica que plantea el recurso, es la doctrina de mitigación de daños. Postula el deber que tiene una persona que sufre perjuicios de adoptar aquellas medidas razonables pertinentes y a su alcance tendentes a reducir el monto de los mismos—*Cía. Fomento Industrial* v. *León*, 99 D.P.R. 633, 647 (1971) ; *Stella* v. *Municipio*, 76 D.P.R. 783, 796 (1954) ; *Palmer* v. *Barreras*, 73 D.P.R. 278, 286 (1952) ; *Ortiz* v. *McCormick Steamship Co.*, 57 D.P.R. 560, 566 (1940) ; y *López* v. *American Railroad Co. of P.R.*, 50 D.P.R. 1, 30 (1936). La misma es aplicable a

las acciones por embargo ilegal, *Nolla* v. *Joa Co. of Florida*, 102 D.P.R. 428 (1974), alcanzando aquellas acciones incoadas por personas jurídicas. Empero, su vigencia no puede derrotar totalmente la causa de acción de la recurrente como concluyó el tribunal de instancia. En esencia y por propia definición su aplicabilidad presupone la existencia y realidad de un daño, pues de lo contrario nada habría que mitigar. Al igual que en otras normas del derecho, su virtualidad y extensión hay que evaluarla a la luz de las circunstancias particulares de cada caso, no existiendo fórmula mágica ni matemática que permita aplicarla con facilidad.

En el recurso ante nos, las circunstancias señalan que la corporación recurrente no gestionó remedio alguno una vez trabado el embargo y clausurado el negocio con el objeto de mitigar los daños que el transcurso del tiempo razonablemente causaba sobre los bienes de su propiedad. Adoptó una posición de pasividad y de abandono total no obstante conocer su administrador y accionista principal señor Mattei tal situación, por lo que nos inclinamos a creer que su actuación estuvo basada en la creencia errónea de que Molinos respondería por daños por embargo ilegal *ad infinitum*. Ello denota un apetito voraz especulativo hacia la obtención de compensación, corroborado por la radicación de la acción en daños y perjuicios sin siquiera haber previamente, o en dicho caso, solicitado el levantamiento del embargo mediante moción al efecto o en la acción independiente de tercería. No es hasta transcurridos catorce (14) meses de dictada la sentencia de archivo en el pleito de cobro de dinero original que solicita tal remedio. Entendemos que parte de los daños que hemos reconocido en nuestro análisis fueron el producto de la falta de diligencia de Fresh-O-Baking Co., Inc. y no del embargo y clausura en sí.

Ahora bien, tampoco la recurrida Molinos actuó diligentemente para aminorar los daños, por lo cual concluimos que

debe compensar a la recurrente en mitad de los daños realmente probados, a saber $5,437.50. ([7])

## II

*Reclamación del Sr. Ruy F. Delgado*

El tribunal de instancia declaró sin lugar la demanda presentada por el Sr. Delgado por el fundamento de estar prescrita. La misma fue interpuesta el 13 de octubre de 1967 y hemos visto que el embargo había sido diligenciado el 5 de mayo de 1965. Los autos y la prueba desfilada claramente evidencian que el recurrente Delgado tuvo conocimiento del mismo a fines del año 1965 (T.E. pág 6 de 2 de septiembre de 1970.)

■ No habiendo sido parte original en la acción judicial de cobro de dinero, sino un tercero, no tenía que esperar a las resultancias de dicho pleito para ejercitar sus derechos. Venía obligado a hacerlos valer dentro del año de haber advenido en conocimiento de la acción, ya que ésta era independiente y separada.

Bajo el argumento deducido de que su causa de acción por pérdida de equipo y material de estudios, a los fines del término prescriptivo, tuvo su génesis al tener conocimiento de tal hecho, también se extinguió su reclamación pues para el 18 de mayo de 1966 el depositario gratuito de tales bienes señor Mattei conocía la situación y es razonable inferir que se lo comunicó. Resulta ilógico, por no decir ingenuo, sostener que una persona que reside en San Juan y visita su hogar maternal en el pueblo de Adjuntas mensualmente (T.E. pág. 62), que está contiguo al de la estructura de la panadería, desconociera la acción de los vándalos acaecida en o antes de la fecha indicada. Además, dicha parte no mitigó los posibles daños a su propiedad, aun cuando tenía acceso a donde estaba

---

([7]) Producto de la suma de las partidas $10,575.00 y $300.00 dividida en igual proporción.

almacenada la maquinaria la cual no había sido cerrada por el alguacil (T.E. págs. 50–51, 59). El error apuntado no fue cometido.

*Se dictará Sentencia declarando con lugar la demanda en daños y perjuicios y condenando a las demandadas Molinos de Puerto Rico, Inc. y Dafco Credit Bureau, Inc., a satisfacer a Fresh-O-Baking Co., Inc. la suma de $5,437.50, las costas del proceso y $500.00 en honorarios de abogado; y confirmando al Tribunal Superior, Sala de Caguas en cuanto a la reclamación de Ruy F. Delgado.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Martín concurre en el resultado.