ROLANDO VALDÉS MOLINA, ETC., ET AL., demandantes y recurridos, *v.* SANTURCE REALTY, INC., demandada y recurrente.

Número: R-75-236          Resuelto: 9 de septiembre de 1976

*Géigel, Silva, Soler Favale* y *Arroyo,* abogados de la recurrente; *Roberto Avila Rivera* y *Guillermo Avila Medina,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Para el 1967 Rolando Valdés Molina operaba dos estudios de fotografía bajo el nombre de Habana Artistic Studio. Uno de los negocios estaba localizado en el número 1672 de la Avenida Ponce de León en Santurce. El otro en el Bayamón Shopping Center en Bayamón. Santurce Realty era la arrendadora del local de Bayamón. Aunque Valdés residía permanentemente en Miami venía a Puerto Rico con frecuencia para ver cómo éstos marchaban.

Debido a que se habían dejado de satisfacer los cánones de arrendamiento del local de Bayamón correspondientes a los meses de mayo a diciembre de 1967, Santurce Realty presentó acción en cobro de dinero contra Rolando Valdés reclamando $3,200.00.

Como medida de aseguramiento de sentencia, Santurce Realty procedió a embargar bienes del deudor. El 18 de diciembre de 1967 Juan F. Méndez Jaime, Alguacil Auxiliar y José Antonio Burgos, depositario judicial seleccionado por el embargante, se personaron en el local de la Habana Artistic en Santurce y tomaron posesión del equipo mueble de fotografía y de oficina que allí se encontraba. Burgos cerró la puerta de entrada del local con una cadena y un candado que había traído consigo. Igualmente hicieron en el local de Bayamón ese mismo día.

Mediante moción de 29 de diciembre de 1967 Valdés solicitó del Tribunal Superior se le entregara la llave de los dos locales. La orden de entrega de llaves proveyó solamente para el local de la Avenida Ponce de León.

El 14 de febrero de 1968 se dictó sentencia declarando con lugar la demanda por falta de pago interpuesta por Santurce Realty contra Valdés. El 16 de abril de 1968 se llevó a cabo la subasta de los bienes embargados, los cuales

fueron adjudicados a Lawrence Kogan, representante de la embargante, por $3,000.

Poco antes, el 29 de marzo de 1968, Valdés había radicado demanda en daños y perjuicios contra Santurce Realty reclamando $150,000 por daños que se le había causado con el cierre de los locales. El Tribunal Superior, Sala de San Juan, Luis A. Juan, Juez, declaró con lugar la demanda ordenando a la demandada a pagar al demandante $225,000. (1) El tribunal de instancia hizo claro "que el 'issue' envuelto, según se desprende de nuestras Conclusiones de Derecho, no es si el embargo fue legal o ilegal, por cuanto surge de los documentos ofrecidos en evidencia que el mismo fue legal, sino, si el cierre de los locales por parte del aquí demandado fue una actuación razonable o en las mismas se eccedió [sic] en sus facultades." Accedimos a revisar.

La recurrente Santurce Realty sostiene que la forma en que el embargo fue llevado a cabo fue legal. Argumenta que aunque los bienes embargados no estaban fuertemente adheridos a los locales, en este caso concurrieron circunstancias especiales que justificaron el cierre de los negocios. Estas razones se reducían a que el depositario judical no tenía un lugar en donde poner la mercancía embargada ni personal para sacarla de los locales, debido a que el embargo se llevó a cabo a las once de la mañana.

No le asiste razón a la recurrente.

En *Fresh-O-Baking* v. *Molinos de P.R.*, 103 D.P.R. 509 (1975), establecimos:

"Usualmente el alguacil y el depositario designado están llamados a realizar el embargo con sujeción a los bienes menciona-

---

(1) La cantidad concedida en daños y perjuicios por el tribunal inferior se desglosa como sigue:

    (a) $ 45,000—Por una compraventa de los negocios que no se pudo llevar a cabo por el cierre de los locales.

    (b) $150,000—Por cuentas susceptibles de cobro que no pudieron ser cobradas al quedar encerradas en los locales.

    (c) $ 30,000—Por angustias mentales.

dos en el señalamiento y orden, careciendo ambos de facultad para tomarse la iniciativa de ordenar el cierre de un local. Sólo una orden expresa del tribunal o aquella implícita que reconocemos emana cuando los bienes en cuestión están adheridos al mismo y cuya remoción razonablemente causaría deterioro y daños, o implica el que se tenga que incurrir en gastos sustanciales desproporcionados a la reclamación, constituyen las excepciones a tal regla, pues la eficacia de la providencia judicial requiere la clausura del local para evitar que el demandado tenga acceso y posesión de los bienes objeto del embargo, haciendo fútil e inoperante el embargo: *Carlo* v. *Corte,* supra, págs. 896–897."

■ La relación que el Alguacil hiciera de los bienes embargados [2] demuestra que todos eran bienes muebles sus-

---

[2]

"Dic. 18 de 1967.

"Certifico que me personé a el negocio conocido por Habana Artistic Studios y procedí a embargar dichos bienes después de haberme mostrado el sr. Rolando Valdés Molina dueño y el sr. Salomón Bender depositario un documento de mandamiento de embargo en el caso 67-6239A. Gentleman Inc. vs. Habana Artistic Studio fue el embargo hecho por sr. All [*sic*] Millán Alg. Aux. el día 8 de Dic. de 1967—Ahora estoy embargando en el caso 67-6781 de Santurce Realty Inc. vs. Habana Artistic Studios hoy día 18 de Dic/68 hecho por el Alg. Aux. Juan F. Méndez Jaime—Cuando entré al negocio estaba abierto al público y entraba y salía persona haciendo negocio el día 18 de Dic. de 1967 a las 11:10 AM

1 caja Registradora Marca RCAllen #8310 serie 0041456
26 sillas de espera de madera y plastico
2 silla secretarial jiratoria
1 silla larga de caja Registradora (stool)
1 sofá curvo de 4 pieza color crema-
1 sofá color Brown
1 sofá color Verde
4 mesas de Esquinero
2 mesas de centro
2 mesas escritorio de madera y formica
1 treepoli de cámara
1 Lámpara del pelo
7 Stand de hierro para poner fotografía
4 Lámpara de techo colgada-
1 Countel de Curva en madera y formica (firmado) José Antonio Burgos, Depositario 12-18-67
1 Santos grande Caridad del Cobre

ceptibles de ser removidos de los locales. La supuesta carencia de almacén y personal para sacar los bienes embargados no justifican el cierre de los locales. Ver *Carlo* v. *Corte*, 58 D.P.R. 889 (1941). Sin embargo la compensación concedida por los sufrimientos del demandante con motivo del cierre de los

---

7 Santos distintos Imágenes
4 Bombillas de 8 pies
2 Stand de poner cuadro de 10 pies de alto madera
1 Cámara con Treepoli
3 Lámparas con su treepoli
1 Electronics serie 557 Serie 400
1 Ampliadora Marca Omega serie 23446
100 Ganchos de metal de revelar películas
12 chasis de cargar películas
1 máquina de secar negativo
3 Emantadora de secar retratos
24 Imágenes santos
1 abanico marca Manning Bowman roto Electric
1 Maquinilla Remington serie SPP-2-51-351
1 Calculadora Marca Víctor sin serie
1 file Supreme Steel Product Inc. de 6 gavetas 8 Pies alto
1 Aire acondicionador marca Anmana
1 aire acondicionador marca Scoriel
1 file de 4 gavetas a un lado
1 abanico de aire
1 Stand de 5 tablillas de hierro
70 Marco de madera para montar retrato y licencias
1 Guillotina de cortar retrato de 12 pulgadas

.        .        .        .        .        .

"Certifico que me personé a la Habana Artistic y levanté la mercancía que aparece en el Inventario y se le entregó al Sr. José Antonio Burgos hoy día 22 de Enero de 1968 la mercancía la recibió hoy Lunes 22 de enero de 1968 en presencia del sr. Salomon Bendet y el sr. Antonio Burgo firmó conforme al inventario. Santurce P.R.

"(Fdo.)  Sr. Luis F. Rivero Otero
Alguacil General

"Por

Juan F. Méndez Jaime
Alg. Aux.

(Fdo.) Antonio Burgos Dávila*
Depositario 1/22/68"

* Nota del Compilador: Así aparece el texto en el original.

.

locales—$30,000—nos parece excesiva. Una indemnización de $3,000 es suficiente.

■ Durante el cierre de los negocios aparentemente se quedaron encerrados los libros de cuentas. El Tribunal Superior, tomando en consideración las cuentas por cobrar de 1966, concedió $150,000 por cuentas dejadas de cobrar debido al cierre de los locales.

La prueba presentada por Valdés para apoyar esa cantidad de cuentas dejadas de cobrar fue vaga y especulativa. El testimonio de José Ramón Pedrogo, contable de los negocios de Valdés, declaró que para el 1967, año en que los negocios fueron cerrados, no se había hecho informe financiero alguno. El último informe cubrió desde enero de 1966 hasta agosto de ese mismo año. En forma imprecisa expresó: "Para mí [las cuentas] cobrables era no menos de $150,000." La declaración de Valdés sobre este particular también fue especulativa.

Consideramos que la cantidad por cuentas por cobrar fue concedida indebidamente. Uno de los locales (el de Santurce) estuvo cerrado más o menos once días y el otro como tres meses. Luego de este término en que estuvieron cerrados los locales, Valdés pudo haber sacado los libros y cobrar las cuentas. También pudo haber solicitado del tribunal una orden para sacar los libros de cuentas ya que éstos no constituían materia embargada. Ver *Fresh-O-Baking*, supra.

También se impugna la determinación del tribunal que concedió a Valdés $45,000 como daños por una compraventa que no pudo llevarse a cabo por el cierre de los locales.

Según Valdés, Francisco Pagés había convenido comprar los negocios de Valdés pagando $45,000 por ellos. Pagés daría a Valdés $15,000 de pronto y el remanente en plazos mensuales de $1,000 hasta el total pago de lo pactado. Al conocer del cierre el comprador se retiró de la relación.

Es de dudosa credibilidad que un negocio por una cantidad tan considerable de dinero meramente se hiciera de una

manera tan informal, siendo las partes unos comerciantes con vasta experiencia. No se había preparado ni firmado ningún documento que evidenciara la compraventa, ni se demostró la capacidad económica del supuesto comprador. Fácil hubiera sido de los $15,000 que el comprador entregaría de pronto, pagar el canon adeudado y continuar con el negocio en marcha. Procede la eliminación de esta partida.

Procede por lo expuesto *modificar la sentencia recurrida eliminando todas sus partidas de daños, con excepción de la referente a daños morales que se reduce a $3,000.*

*Así modificada, se confirmará.*