Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (I)

| CARMEN BURGOS LÓPEZ<br><br>Apelante<br><br>v.<br><br>ASOCIACIÓN CONDOMINIO BRISAS DE SOLIMAR, INC., T/C/C BRISAS DE SOLIMAR CONDOMINIUM ASSOCIATION Y COMO CONDOMINIO BRISAS DE SOLIMAR, INC. Y OTROS<br><br>Apelados | KLAN202400385 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso núm.: LU2022CV00164 (307)<br><br>Sobre: Embargo Ilegal |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz

**Rivera Torres, Juez ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2024.

Comparece ante este tribunal apelativo la Sra. Carmen Burgos López (la señora Burgos López o la apelante) mediante el recurso de apelación de epígrafe y nos solicita que revoquemos la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (el TPI), el 9 de febrero de 2024, notificada el 12 posterior. Mediante este dictamen, el foro primario concedió el petitorio desestimatorio sumario solicitado por Brisas de Solimar Condominium Association, ERS Housing Administration Services, Inc. y la Asociación Condominio Brisas de Solimar (en conjunto, la parte apelada). En consecuencia, declaró *Sin Lugar* la demanda incoada por la apelante y desestimó la misma con perjuicio.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Sumaria* apelada.

**I.**

El 26 de octubre de 2022, la señora Burgos López instó la presente demanda en daños y perjuicios por alegado embargo ilegal. En síntesis, adujo que la orden de embargo es ilegal por cuanto es producto de una sentencia contraria a derecho y dictada en rebeldía el 10 de agosto de 2012 en el caso N1CI201100561. Este último fue una acción en cobro de dinero por falta de pago de cuotas de mantenimiento. Alegó, además, que al momento en que se presentó la demanda en cobro dinero, ya ella no era la dueña del apartamento. En consecuencia, solicitó la devolución del dinero embargado, más $100,000 en compensación por los daños ocasionados y $10,000 en honorarios de abogado.

El 23 de diciembre de 2022, Brisas de Solimar Condominium Association y ERS Housing Administration Services, Inc., presentaron una *Moción Solicitando se Dicte Sentencia Sumaria Desestimando la Demanda.* En la misma, propusieron veintiocho (28) hechos que a su entender no estaban en controversia y acompañaron veintitrés (23) documentos.

Ese mismo día, el foro apelado dictó varias órdenes y entre éstas, concedió a la apelante el término de veinte (20) días para expresar su posición en cuanto al petitorio sumario.[1] Esta orden fue notificada el 27 de diciembre de 2022. El 10 de enero de 2023, la Asociación Condominio Brisas de Solimar presentó una moción para unirse al pedido sumario.

El 12 de enero de 2023, la apelante solicitó una prórroga para presentar su oposición.[2] Al día siguiente, el TPI dictó una orden concediendo la prórroga solicitada.[3] No obstante, el 30 de enero de 2023 el foro *a quo* dictó *Sentencia Sumaria.*[4] Mediante ésta,

---

[1] Véase el Apéndice del Recurso, a la pág. 87.
[2] *Íd.*, a la pág. 91.
[3] *Íd.*, a la pág. 93.
[4] *Íd.*, a las págs. 94-103.

declaró *sin lugar* la demanda y la desestimó con perjuicio, condenando a la apelante al pago de las costas, gastos legales y $1,000 de honorarios de abogado <u>por considerar que ésta actuó temerariamente al presentar la demanda</u>.[5]

El 15 de febrero de 2023, la señora Burgos López solicitó la reconsideración del dictamen. El 10 de marzo siguiente, el TPI declaró *no ha lugar* el petitorio.[6]

Insatisfecha aún, la apelante acudió ante esta Curia mediante el recurso alfanuméricamente designado como el KLAN202300291. El 18 de mayo de 2023, dictamos *Sentencia* revocando el dictamen apelado para que el TPI le concediera a la apelante un término para presentar su contestación a la sentencia sumaria.[7]

El 28 de agosto de 2023, la apelante presentó la oposición en la cual <u>no hace referencia a los párrafos enumerados por la parte promovente</u>, Brisas de Solimar Condominium Association y ERS Housing Administration Services, Inc.[8] La referida moción fue acompañada de dos (2) documentos, a saber, Consulta de Casos del Portal del Poder Judicial sobre el NCSI202000788 y las instancias registrales del apartamento según constan en el Sistema Karibe.

Así las cosas, el 12 de diciembre de 2024, el foro *a quo* emitió el dictamen apelado, en el cual consignó como determinaciones los hechos propuestos por la parte apelada y añadió como hecho veintinueve (29) que la apelante no cumplió con los requisitos de la Regla 36 de las de Procedimiento Civil. Incluso, consignó que ésta intentó traer nuevas alegaciones sin cumplir con los requisitos establecidos en la Regla 13.1 de las de Procedimiento Civil.[9] A su vez, el foro apelado razonó que:[10]

---

[5] *Íd.*, a la pág. 103.
[6] *Íd.*, a la pág. 138.
[7] El Juez Sánchez Ramos emitió un voto disidente.
[8] Véase el Apéndice del Recurso, a la pág. 154.
[9] *Íd.*, a la pág. 188.
[10] *Íd.*, a las págs. 190 y 191.

[...], ... que al momento de presentarse la demanda de Cobro de Dinero y dictarse la Sentencia en el Caso Civil Número N1CI201100561, la demandante Carmen Delia Burgos López y el señor Gilberto R. Cuevas Sanjurjo, eran los dueños registrales del apartamento objeto de cobro de dinero en dicho caso, y no el Banco Popular como arguye la parte demandante en la presente demanda. Por lo tanto, la señora Carmen Delia Burgos López y el señor Gilberto Rubén Cuevas Sanjurjo, eran los responsables de manera solidaria de pagar las cuotas de mantenimiento a la fecha del 30 de noviembre de 2011, como se estableció en la Sentencia del Caso Civil Número N1CI201100561.

Insatisfecha, la señora Burgos López solicitó reconsideración. Adujo que debió celebrarse una vista evidenciaria a los fines de poder determinar si en efecto la sentencia dictada en el N1CI201100561 es nula por falta de jurisdicción sobre su persona. En la alternativa, solicitó se dicte la presente sentencia sumaria sin perjuicio para preservar la presente causa de acción sobre embargo ilegal. El 19 de marzo de 2024, notificada ese mismo día, el TPI declaró no ha lugar al petitorio.

Todavía en desacuerdo, la apelante comparece nuevamente ante este foro intermedio imputándole al TPI la comisión de los siguientes errores:

PRIMER ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO DESPOJÓ A LA DEMANDANTE DE UNA OPORTUNIDAD REAL DE APELAR CUANDO DICTÓ UNA SENTENCIA INSUFICIENTE QUE CARECE DE UNA ADJUDICACIÓN BASADA EN CONCLUSIONES ESPECÍFICAS SOBRE: LA IMPROCEDENCIA DE LA RECLAMACIÓN DE EMBARGO ILEGAL, EL SUPUESTO INCUMPLIMIENTO DE LA DEMANDANTE CON LOS REQUISITOS DE FORMA Y CONTENIDO DISPUESTOS EN LA REGLA 36 DE PROCEDIMIENTO CIVIL; Y LA ALEGADA ENMIENDA.

SEGUNDO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ, SUMARIAMENTE, QUE BRISAS DE SOLIMAR HABÍA CUMPLIDO EN EL CASO CIVIL NÚM. N1CI201100561, CON EL REQUISITO ESTABLECIDO EN LA REGLA 51.1 DE LAS DE PROCEDIMIENTO CIVIL, AL RADICAR SU "MOCIÓN SOLICITANDO AUTORIZACIÓN PARA LA EJECUCIÓN DE LA SENTENCIA MUEBLE", A PESAR DE QUE EL EXPEDIENTE JUDICIAL REVELA LO CONTRARIO.

TERCER ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ, SUMARIAMENTE, QUE LA SEÑORA CARMEN DELIA BURGOS LÓPEZ Y EL SEÑOR GILBERTO RUBÉN CUEVAS SANJURJO, ERAN SOLIDARIAMENTE RESPONSABLES DE PAGAR LAS CUOTAS DE MANTENIMIENTO A LA FECHA DEL 30 DE

NOVIEMBRE DE 2011, COMO SE ESTABLECIÓ EN LA SENTENCIA DEL CASO CIVIL NÚMERO N1CI201100561.

CUARTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO CONCLUYÓ, SUMARIAMENTE, QUE NO RESULTABA NECESARIO CELEBRAR UN JUICIO PORQUE EXISTÍAN CONTROVERSIAS SOBRE HECHOS MATERIALES NO REBATIDOS POR LA DEMANDANTE, CUANDO FUE EL TRIBUNAL QUIEN LA PRIVÓ DE LA OPORTUNIDAD DE PODER REBATIRLOS.

QUINTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO DESESTIMÓ LA DEMANDA CON PERJUICIO CUANDO, EN EL PEOR DE LOS CASOS, DEBIÓ HABERLA DESESTIMADO SIN PERJUICIO.

SEXTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO DETERMINÓ QUE LA DEMANDANTE HABÍA SIDO TEMERARIA SOLO POR EL HECHO DE HABER RADICADO LA DEMANDA DE AUTOS Y, EN SU CONSECUENCIA, IMPONERLE EL PAGO DE HONORARIOS DE ABOGADOS.

El 22 de abril de 2024, emitimos una *Resolución* concediendo el término de treinta (30) días a la parte apelada para presentar su alegato en oposición. El 23 de mayo siguiente, se cumplió con lo ordenado, por lo que nos damos por cumplidos y decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo, así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### Mecanismo de Sentencia Sumaria

En nuestro ordenamiento, el mecanismo de la sentencia sumaria está gobernado por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, la cual autoriza a los tribunales a dictar sentencia de forma sumaria si mediante declaraciones juradas u otro tipo de prueba se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Más específicamente, la Regla 36.1, 32 LPRA Ap. V, R. 36.1, atiende la solicitud de este tipo de disposición a favor de la parte reclamante en un pleito, mientras que la Regla 36.2, 32 LPRA Ap. V, R. 36.2, permite su petición a favor de la parte contra la que se reclama. En ambas reglas se establece lo siguiente:

**Regla 36.1. A favor de la parte reclamante**

Una parte que solicite un remedio podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

**Regla 36.2. A favor de la parte contra quien se reclama**

Una parte contra la cual se haya formulado una reclamación podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3, 32 LPRA Ap. V, R. 36.3, dispone los requisitos de contenido de la moción de sentencia sumaria y de la contestación a ésta, entre otras particularidades del procedimiento. Estos requisitos, como los párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, no son un mero formalismo, ni constituye un simple requisito mecánico sin sentido. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

En un primer plano, mediante el uso del mecanismo discrecional de la sentencia sumaria, se aligera la tramitación de un caso, puesto que, ante la ausencia de controversia de hechos, al tribunal solo le corresponde aplicar el derecho. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014). Así, sirve para propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no requieren la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una o varias controversias de derecho. *Íd.*

Este tipo de resolución procede en aquellos casos en los que no existen controversias **reales y sustanciales** en cuanto a los **hechos materiales** y, por lo tanto, lo único que resta es aplicar el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109

(2015). La precitada Regla 36 de las de Procedimiento Civil, *supra*, dispone, en esencia, que para permitir este tipo de adjudicación resulta necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia surja que no existe controversia real y sustancial, respecto a ningún hecho esencial y pertinente; y en adición, que se deba dictar sentencia sumaria como cuestión de derecho. *Íd.* En este sentido, solo procede dictarla cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y que el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.*, a las págs. 109-110.

Es decir, por un lado, al promovente de la moción le toca establecer su derecho con claridad y demostrar que no existe controversia en cuanto a ningún hecho material, o sea ningún componente de la causa de acción. *Íd.*, a la pág. 110. Por el otro, al oponente le corresponde establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria. *Íd.* Cabe recordar que, en este contexto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Íd.* Mas específicamente, el oponente debe controvertir la prueba presentada y no debe cruzarse de brazos, pues de lo contrario se expone a que se acoja la solicitud de sentencia sumaria y se le dicte en contra. *Ramos Pérez v. Univisión,* 178 DPR 200, 214-215 (2010). Esto significa que <u>está obligado a contestar de forma detallada y específica aquellos hechos pertinentes que demuestran la existencia de una controversia real y sustancial que requiere dilucidarse en un juicio.</u> *Íd.*, a la pág. 215. En este ejercicio, debe presentar declaraciones juradas o documentos que pongan en controversia los

hechos alegados por el promovente, <u>recordando que tampoco puede descansar en meras alegaciones, sino que debe proveer evidencia sustancial de los hechos materiales en disputa</u>. *Íd.*

No obstante lo anterior, no oponerse a la solicitud de sentencia sumaria no implica, ni que procederá dictarla obligatoriamente, si existe una controversia legítima sobre un hecho material, ni que corresponderá dictarla a favor de su proponente si no procede en derecho. *Íd.*

Ahora bien, se han establecido ciertas reglas limitantes de la discreción en el uso de la moción de sentencia sumaria. Por un lado, la determinación en cuanto a ésta debe guiarse por un principio de liberalidad a favor de la parte que se opone, lo cual persigue evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben ser resueltas. *Íd.*, a las págs. 216-217. Por el otro, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de derecho no procede. *Oriental Bank v. Perapi*, supra, a las págs. 26-27. Dicho esto, cabe indicar que la moción de sentencia sumaria no está excluida en ningún tipo de pleito, puesto que, sin importar cuán complejo sea un pleito, <u>puede dictarse si de una moción de sentencia sumaria bien fundamentada surge que no hay controversia sobre hechos materiales</u>. *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 112.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones, sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal**

**de Primera Instancia**. *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 115. En *Meléndez González,* el Tribunal Supremo atemperó este estándar a las exigencias de las nuevas Reglas de Procedimiento Civil y a lo que ya había establecido hace una década en *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). Así las cosas, consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra,* a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia **y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo**. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición **cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civi**l, supra, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra.
>
> Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones **debe revisar si en realidad existen hechos materiales en controversia**. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> Cuarto y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

**El Emplazamiento**

En términos generales, la jurisdicción ha sido conceptualizada como el poder o autoridad con el que está investido un tribunal u organismo adjudicativo para atender los casos y las

controversias que se le presenten. *Pérez López y otros v. CFSE,* 189 DPR 877 (2013). Ningún tribunal podrá actuar sobre un demandado sin antes haber adquirido la autoridad necesaria para ello, es decir, si antes no adquiere jurisdicción sobre su persona. *Cirino González v. Administración de Corrección, et al.,* 190 DPR 14 (2014).

Dentro de nuestro esquema adversativo civil el emplazamiento constituye el paso inaugural del debido proceso de ley, que viabiliza el ejercicio de la jurisdicción judicial. *Acosta v. ABC, Inc.,* 142 DPR 927 (1997); *Reyes v. Oriental Fed. Savs. Bank,* 122 DPR 15 (1993). El emplazamiento también persigue el propósito de notificar a la parte demandada que se ha instado en su contra una reclamación civil de suerte que pueda ésta comparecer al pleito, ser oída y defenderse si es que así lo interesa. *Rivera Marrero v. Santiago Martínez,* 203 DPR 462 (2019); *Bernier González v. Rodríguez Becerra,* 200 DPR 637 (2018). Asimismo, el emplazamiento permite que la parte contra la cual se ha iniciado el proceso en su contra quede obligada con el dictamen que en su día emita el tribunal. *Pérez Quiles v. Santiago Cintrón,* 206 DPR 379 (2021); *Torres Zayas v. Montano Gómez, et als.,* supra.

Al ser el emplazamiento un mecanismo de rango constitucional, el fiel y cabal obedecimiento de sus requisitos resulta ser del estricto cumplimiento. *In re Rivera Ramos,* 178 DPR 651 (2010); *Global v. Salaam,* 164 DPR 474 (2005); *Banco Popular v. S.L.G. Negrón,* 164 DPR 855 (2005). El derecho procesal civil vigente, 32 LPRA Ap. V, contempla la posibilidad de emplazar a un demandado mediante tres (3) métodos distintos. La Regla 4.4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 4.4, regula lo concerniente al emplazamiento personal, que no es otra cosa que, la entrega directa y personal al demandado, de copia de la demanda y del emplazamiento. La Regla 4.5 por su parte, 32 LPRA Ap. V, R. 4.5,

provee para el emplazamiento mediante renuncia voluntaria del demandado al emplazamiento personal. Finalmente, la Regla 4.6, 32 LPRA Ap. V, R. 4.6, trata lo relativo al emplazamiento por edicto. De su texto surge que en ciertas ocasiones nuestro sistema procesal civil le permite a un demandante prescindir del emplazamiento personal de un demandado, pudiendo optar por recurrir a métodos alternos de notificación como lo es el emplazamiento por edicto. *Rivera v. Jaume*, 157 DPR 562 (2002).

La Regla 4.6, *supra*, de forma clara dispone como una condición previa a la autorización para emplazar por edicto, que el demandante presente ante el tribunal junto con su solicitud a tales fines, una declaración jurada. Esta declaración jurada tiene que acreditar fehacientemente las diligencias realizadas por el demandante con el propósito de localizar al demandado y emplazarlo personalmente. La declaración a presentarse tiene que contener hechos claros, específicos y detallados demostrativos de todas las diligencias practicadas por el demandante con el fin de emplazar personalmente al demandado. Meras generalidades no tendrán valor significativo alguno. *Sánchez Ruiz v. Higuera Pérez y otros*, 203 DPR 982, 988 (2020); *Banco Popular v. S.L.G. Negrón*, supra, a la pág. 865.

Como buena práctica se ha reconocido el inquirir con las autoridades de la comunidad, tales como policía, alcalde y administrador de correo, porque a fin de cuentas son estas las personas, que con alguna probabilidad, pudieran conocer la residencia y paradero de las personas que viven en la comunidad que son buscadas para ser emplazadas. *Sánchez Ruiz v. Higuera Pérez y otros*, supra. El resultado de tales diligencias debe ser parte del **contenido** de la Declaración Jurada. *Global v. Salaam*, supra, a la pág. 483. Asimismo, ha sido avalado como correcta metodología expresar en la declaración jurada las personas con quienes se

investigó y sus respectivas direcciones. *Sánchez Ruiz v. Higuera Pérez y otros*, supra. Resulta entonces imperativo demostrar mediante la declaración de referencia que se han realizado todas estas diligencias y algunas otras, puesto que es la única manera en que satisfactoriamente se le podrá acreditar al tribunal la imposibilidad de una notificación personal al demandado, lo que a su vez constituirá, la única forma en que el foro adjudicador podrá construir una correcta y válida autorización para emplazar por edicto. El tribunal deberá tomar en consideración las circunstancias particulares del caso y corroborar a su satisfacción la suficiencia de las diligencias del demandante contenidas en la declaración jurada antes de autorizar el emplazamiento por edicto solicitado. *Banco Popular v. S.L.G. Negrón*, supra; *Mundo v. Fuster*, 87 DPR 363, 372 (1963).

**Las cuotas de mantenimiento y la figura del adquiriente involuntario**

Desde la aprobación de la Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958, según enmendada, 31 LPRA 1293 *et seq.*, se estableció como uno de los principios esenciales de la vida en comunidad dentro del régimen de propiedad horizontal, **la obligación de cada titular al pago de los gastos comunes o cuotas de mantenimiento** y que, del titular transmitir la propiedad, éste y el adquirente tendrían la responsabilidad solidaria del pago de las cuotas de mantenimiento impagadas.[11] Posteriormente, se aprobó la Ley Núm. 157 de 4 de junio de 1976, que enmendó dicho Artículo 41, 31 LPRA sec. 1293e, y entre otras cosas, clasificó como adquirente voluntario al obligado <u>a responder solidariamente</u> con el transmitente del pago de las cuotas de mantenimiento adeudadas.

---

[11] Véase, Artículos 39 y 41 de la Ley de Propiedad Horizontal (1958), 31 LPRA secs. 1293c y 1293e, respectivamente.

Así las cosas, el referido Artículo 41 sufrió variadas enmiendas entre las cuales fue incorporada la figura del <u>adquirente involuntario</u> para imponerle la responsabilidad del pago de hasta tres cuotas de mantenimiento adeudadas al momento del traspaso de titularidad del inmueble ejecutado.[12]    Luego dicha responsabilidad fue duplicada al imponerle la responsabilidad del pago de hasta <u>seis cuotas de mantenimiento adeudadas al momento de adquirir la propiedad.</u>[13]    Además, se añadió que eran adquirientes involuntarios los acreedores hipotecarios que, en cobro de su crédito, adquieren un inmueble.[14]

Entonces, el 16 de agosto de 2020, se aprobó la vigente Ley Núm. 129-2020, conocida como la *Ley de Condominios de Puerto Rico*, a los fines de actualizar las normas que rigen la convivencia en los condominios y derogar la Ley Núm. 104 de 25 de junio de 1958.  En lo aquí pertinente, la referida Ley incorporó entre sus definiciones al adquirente voluntario e involuntario.  Estableció que:[15]

> b) Adquiriente Involuntario – El acreedor hipotecario que, para proteger su acreencia, adquiera una propiedad como parte de un proceso de ejecución de hipoteca, licitando o sin licitar, o de dación en pago, total o parcial.
>
> c) Adquiriente Voluntario – Persona que, luego de ejercer su criterio en el curso usual de los negocios, deliberadamente adquiere el bien inmueble porque le resulta un buen negocio.  Se entiende que incluye a un comprador convencional, un donatario, un heredero, un legatario, un permutante o un licitador que se lleva la buena pro en la subasta.

Asimismo, dicha Ley de Condominios de Puerto Rico, en su Artículo 60, dispuso que el adquirente voluntario <u>sería responsable solidariamente del pago de sumas por los gastos comunes</u>, y el <u>adquirente involuntario sería responsable de las deudas por gastos comunes</u> surgidas y no satisfechas durante los seis (6) meses

---

[12] Véase, Ley Núm. 43-1996.
[13] Véase, Artículo 41 de la Ley Núm. 103-2003, 31 LPRA sec. 1293c.
[14] Véase, Artículo 41 de la Ley Núm. 119-2016, 31 LPRA sec. 1293c.
[15] Véase, Artículo 3 incisos (b) y (c) de la Ley Núm. 129-2020, 31 LPRA sec. 1921b.

anteriores al momento de adquirir la propiedad.[16] En *Condominio First Federal v. LSREF2*, 210 DPR 403, 416 (2022), nuestro Tribunal Supremo reiteró que en *Asociación de Condómines v. Naveira*, 106 DPR 88 (1977), se identificaba el interés disímil entre el adquirente voluntario y el involuntario, lo que estriba en que: "El [adquiriente] voluntario es un comprador que bien informado de los gravámenes y cargas del apartamiento lo adquiere porque es un buen negocio. El adquirente involuntario es originalmente un acreedor cuyo interés fundamental no es hacerse dueño del apartamiento, sino **proteger su acreencia** constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio. [citas omitidas]." [Énfasis nuestro].

### III.

Primariamente resulta necesario consignar que la parte apelada cumplió con los requisitos procesales formales de la Regla 36.3 de las Reglas de Procedimiento Civil, *supra*, realizando una exposición breve de las alegaciones y una relación concisa, organizada, en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales entendía no había una controversia sustancial con indicación a los documentos acompañados. Sin embargo, la contestación de la parte apelante **no cumplió con los requisitos señalados en el inciso (b) de la referida regla**. En el presente recurso apelativo la apelante señala que erró el TPI al no

---

[16] El Artículo 60 de la Ley 129-2020 íntegramente dispone: La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 59, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis (6) meses anteriores al momento de adquirir la propiedad **excepto las partidas correspondientes a penalidades por atrasos o mora, derramas, intereses y sanciones atribuibles al titular**, incluirá el balance corriente que se acumule <u>desde la adquisición de dicho inmueble por parte del adquiriente involuntario</u>. La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna.

consignar en qué consistió el alegado incumplimiento. Sin embargo, y como bien apuntalara la parte apelada, de una mera lectura del referido inciso y de la oposición presentada es suficiente para conocer el alcance de su incumplimiento. La Regla 36.3 de las Reglas de Procedimiento Civil, *supra*, es clara en sus requisitos de forma.

En lo relativo al ejercicio de nuestra facultad revisora, reiteramos que es *de novo* y debemos utilizar los mismos criterios que el Tribunal de Primera Instancia. Respecto al estándar de la Regla 36.1 de las Reglas de Procedimiento Civil, *supra*, precisamos que ésta autoriza a los tribunales a dictar sentencia de forma sumaria si mediante declaraciones juradas u otro tipo de prueba se demuestra la <u>inexistencia de una controversia sustancial de hechos esenciales y pertinentes</u>. Como indicamos, de proceder este mecanismo discrecional se aligeraría la tramitación de un caso, pues el tribunal solo tendría que aplicar el derecho.

Establecido el estándar de análisis veamos si se cometieron los errores señalados por la apelante, los cuales, por estar relacionados entre sí, discutiremos conjuntamente.

De entrada, destacamos que una parte que solicite ser relevada de los efectos de una sentencia por haber sido dictada sin jurisdicción sobre su persona, podrá presentar una solicitud al amparo de la Regla 49.2(d) de las de Procedimiento Civil, *supra*, la cual deberá instarse dentro de los seis (6) meses siguientes de haberse registrado la sentencia.[17] Luego de transcurrido ese plazo, deberá recurrir a una acción independiente de nulidad de sentencia.[18] Los remedios provistos por la Regla 49.2 de las de Procedimiento Civil, *supra*, reducen considerablemente el ejercicio

---

[17] Véase, *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 246 (1996); J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, Tomo IV, a la pág. 1415.
[18] Véase, *Bco. Santander P.R. v. Fajardo Farms Corp.*, supra, a las págs. 246-247.

de una acción independiente a los casos en los que transcurrió el término fatal de seis meses y las circunstancias son tales "que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, **tiene una buena defensa en los méritos**".[19]

En el presente caso, sin duda alguna han transcurrido **en exceso de los seis (6) meses dispuestos en la referida Regla 49.2**, *supra,* para solicitar la nulidad de la sentencia dictada el 10 de agosto de 2012 en el caso N1CI201100561. Por lo que, la apelante solo tiene como remedio el ejercicio de una acción independiente, la cual correctamente entabló mediante la demanda de epígrafe. En consecuencia, no le asiste la razón a la apelante, y es un argumento errado en derecho, invocar que la reclamación de embargo ilegal es prematura y que la nulidad de la sentencia se tiene que decretar "en el mismo caso de cobro de dinero, entonces, el TPI debió decretar la desestimación [de] la Demanda de embargo ilegal, sin perjuicio."[20] Por ende, aclarado que la demanda de epígrafe es el ejercicio correcto para solicitar la nulidad de la sentencia dictada en el caso N1CI201100561, procedemos a analizar el uso del mecanismo de sentencia sumaria para disponer del mismo.

Como indicáramos, el foro apelado concluyó que en el caso de autos no existían hechos esenciales en controversia, por lo que procedía su adjudicación de manera sumaria. Así, y en esencia, determinó que la señora Burgos López **responde legalmente** a la parte apelada por las cuotas de mantenimiento vencidas y no pagadas del apartamento 1302 del Condominio Brisas de Solimar hasta el 4 de abril de 2013, según surge de la carta remitida por el Banco Popular de Puerto Rico el 12 de agosto de 2015. Además,

---

[19] Véase, *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).
[20] Véase, escrito de *Apelación* a la pág. 21.

concluyó que la parte apelada cumplió con los requisitos de la Regla 51.1 de las de Procedimiento Civil al solicitar la autorización requerida por dicha regla previo a la ejecución y embargo de los bienes. Ello, acorde con lo que requiere la referida norma al expresar en su pedido que, expirado el término de cinco (5) años, "la sentencia podrá ejecutarse mediante una autorización del tribunal, a moción de parte y previa notificación a todas las partes."[21]

Por lo cual, no concurrimos con la apreciación de la apelante en cuanto que ésta alega que el dictamen recurrido contiene expresiones generalizadas sobre un cumplimiento que no está sostenido en la prueba acompañada por la parte apelada en su solicitud de sentencia sumaria. Destacamos que los requisitos de la Regla 51.1 de las de Procedimiento Civil, *supra*, son distintos a los requisitos de la Regla 4.6 del mismo cuerpo de reglas.

De otra parte, reiteramos los postulados de la Regla 36 de las Reglas de Procedimiento Civil, antes consignados, referentes a que le correspondía a la apelante, como oponente, establecer que efectivamente <u>existe una controversia real</u> en cuanto a algún hecho material. Recordando que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el **derecho sustantivo** aplicable. De igual manera, la apelante debía controvertir la prueba presentada, pues de lo contrario se exponía a que se acogiera la solicitud de sentencia sumaria y se le dictará en su contra, como efectivamente aconteció. Reiteramos, que la señora Burgos López estaba obligada a contestar, de forma detallada y específica, aquellos hechos pertinentes que demostraran la existencia de una controversia real y sustancial que requerían se dilucidaran en un juicio plenario. En dicho ejercicio, ésta debía presentar declaraciones juradas o documentos que pusieran en

---

[21] Véase, Apéndice del Recurso, a las págs. 65-67.

controversia los hechos alegados por la parte apelada (la promovente).

En virtud de lo antedicho, y de una lectura de la moción intitulada *Oposición de la Demandante, a solitud de Sentencia Sumaria* surge que la apelante incumplió con su obligación. Por ende, resulta ser insuficiente meramente alegar que no fue emplazada conforme a derecho y descansar en los documentos presentados por la parte apelada que demuestran todo lo contrario. De hecho, todos los documentos que acompañó la parte apelada en su petitorio constituyen récords judiciales que demuestran el cumplimiento con el ordenamiento procesal vigente. En consecuencia, resulta forzoso concluir que la apelante no pudo rebatir mediante hechos esenciales y pertinentes la presunción de corrección de la sentencia dictada en el caso N1CI201100561.

De otro lado, como indicáramos, el 26 de octubre de 2022, la señora Burgos López instó la demanda de epígrafe donde adujo que era ilegal el embargo de su cuenta bancaria. Según ésta, su ilicitud estriba en que a la fecha en que se ejecutó la sentencia, el apartamento ya no le pertenecía. Sobre esto, abundó que, el 4 de enero de 2017, el apartamento había sido adquirido mediante compra por otras personas y que todos los gravámenes correspondientes habían sido cancelados.[22] Ahora bien, es en su oposición a la sentencia sumaria que aduce por primera vez que la parte apelada incumplió con los requisitos que impone la Regla 4.6 de las de Procedimiento Civil, *supra*, ya que pretendió emplazar personalmente a la apelante acudiendo al apartamento a pesar de conocer que este había sido previamente ejecutado por el banco por lo que era necesario que en la declaración jurada el emplazador

---

[22] Véase, Apéndice del Recurso, a la pág. 4 (alegaciones 28, 31 y 32).

consignara gestiones adicionales y no generalizadas.[23] También arguyó por primera vez que la parte apelada no cumplió con el término dispuesto en la Regla 4.6 y la Regla 65.3 de las Reglas de Procedimiento Civil al notificar tanto el emplazamiento como la sentencia el mismo día de sus publicaciones.

Como es conocido en nuestro ordenamiento, el emplazamiento es el mecanismo procesal que permite al tribunal adquirir jurisdicción sobre el demandado. Como norma general, el emplazamiento debe ser personal. No obstante, por vía de excepción se permite el emplazamiento por edictos. La Regla 4.6 de las de Procedimiento Civil, *supra*, dispone que el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto cuando la persona a ser emplazada esté fuera de Puerto Rico, o estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes, o se oculte para no ser emplazada.

Conforme surge de los hechos que no están en controversia, el entonces matrimonio compuesto por el Sr. Gilberto Rubén Cuevas Sanjurjo y la señora Burgos López adquirieron el 20 de febrero de 1998 el apartamento 1302 del Condominio Brisas de Solimar en el Municipio de Luquillo.[24] El 20 de septiembre de 2012, el Banco Popular de Puerto Rico instó demanda en ejecución de hipoteca contra el entonces matrimonio, en el caso NSCI200200788.[25] En el referido caso, el matrimonio **fue emplazado y se dictó sentencia en rebeldía** el 5 de mayo de 2003.[26] El **4 de abril de 2013, al Banco Popular de Puerto Rico se le adjudicó la *buena pro* del inmueble** subastado en abono a su sentencia.[27] Por ende, a partir de esa

---

[23] Como consignáramos en la nota al calce 23, la apelante no incluyó en el apéndice dicho documento.

[24] Véase, Apéndice del Recurso, a las págs. 32-33.

[25] Véase, Portal de la Rama Judicial, Consulta de Casos.

[26] *Íd.*

[27] Véase, Apéndice del Recurso, a las págs. 55-56. Además, surge del Portal del Poder Judicial, Consulta de Casos, que el 6 de noviembre de 2013, el Banco Popular de Puerto Rico solicitó orden y mandamiento de desalojo de la propiedad.

fecha, se convirtió en un **adquiriente involuntario**. Como destacamos en el derecho precedente, el adquirente involuntario es originalmente un acreedor cuyo interés fundamental no es hacerse dueño del apartamiento, sino proteger su acreencia constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio.

El 12 de diciembre de 2011, la parte apelada presentó demanda en cobro de dinero contra dicho matrimonio por las cuotas de mantenimiento atrasadas y no pagadas al 30 de noviembre de 2011, caso N1CI201100561. El matrimonio **fue emplazado por edicto** y el 10 de agosto de 2012 **se dictó Sentencia en rebeldía** declarando con lugar la demanda.[28] La sentencia fue notificada por edicto el **22 de febrero de 2013**.[29] En el tracto procesal que realizó la parte apelada en su escrito en oposición consignó que, el 1 de octubre de 2014, se dictó *Orden de Ejecución de Sentencia* y el día 3 se expidieron los mandamientos, pero los intentos para lograr el embargo de los bienes resultaron infructuosos.[30]

Así las cosas, no es hasta el 15 de abril de 2021 que el TPI emitió el *Mandamiento de Ejecución* de los bienes a nombre del Sr. Gilberto Rubén Cuevas Sanjurjo y de la señora Burgos López, entre estos, sus cuentas bancarias para responder por la sentencia dictada en su contra.[31] El 11 de agosto de 2022, se dictó el *Señalamiento de Embargo*.[32] El 27 de octubre de 2022, la apelante presentó *Moción Urgente en Torno a Embargo Ilegal* informando al tribunal de la demanda de epígrafe y solicitando que ordenara a la parte apelada abstenerse de disponer de los fondos embargados. La referida moción fue declarada sin lugar el 8 de diciembre de 2022, notificada al día siguiente. [33]

---

[28] Véase, Apéndice del Recurso a la pág. 45.
[29] *Íd.*, a la pág. 47.
[30] Véase, Alegato de la parte apelada, a la pág. 5.
[31] Véase, Apéndice del Recurso, a la pág. 74.
[32] *Íd.*, a la pág. 75.
[33] *Íd.*, a las págs. págs. 80-81. Del récord judicial no surge que las partes hayan instado un recurso de certiorari ante esta Curia.

En consecuencia, reiteramos que de los récords judiciales de ambos casos no surge el incumplimiento que alega la apelante. Puntualizamos que en nuestro ordenamiento toda sentencia se presume correcta, por lo que le correspondía a la apelante presentar prueba en contrario.[34] El hecho de que la señora Burgos López ya no fuera la dueña del apartamento o que no viviera el mismo, no controvirtió el hecho de que la parte apelada tenía una sentencia a su favor en concepto de la deuda acumulada por ésta y su entonces esposo. Por otro lado, no surge un solo detalle del cual se pueda deducir que el uso del emplazamiento por edictos fuera el incorrecto.

Por otra parte, es sumamente sorprendente que la apelante argumente que el foro apelado desestimó su reclamación sin que hubiese contado con la oportunidad de presentar la prueba que sostenía su reclamo.[35] Cuando precisamente, el 18 de mayo de 2023, esta Curia dictó *Sentencia* en el caso KLAN202300291, revocando el dictamen apelado para que así **pudiera cumplir con su obligación de formular una oposición sustentada con prueba adecuada en derecho**.[36] Como adelantáramos, la señora Burgos López incumplió con los requisitos de forma y contenido dispuestos en la Regla 36, antes explicada, como correctamente consignó el TPI en la determinación de hecho número 29 de la sentencia apelada. Recalcamos que tampoco presentó declaraciones juradas o documentos que pusieran en controversia los hechos alegados por la parte apelada.

Por ende, nuevamente apuntalamos que era insuficiente meramente alegar que la apelante no fue emplazada conforme a derecho, tenía que demostrarlo con hechos. Al respecto, no existe prueba alguna de la cual podamos inferir que el foro *a quo* abusó de

---

[34] Véase, *Vargas v. González*, 149 DPR 859, 866 (1999).
[35] Véase, escrito de *Apelación*, a la pág. 20.
[36] Véase, la referida sentencia, a la pág. 8.

su discreción al autorizar el emplazamiento por edicto en el caso N1CI201100561.

En fin, forzoso es concluir que la apelante no pudo rebatir mediante hechos esenciales y pertinentes la presunción de corrección de la sentencia allí dictada. Por tanto, habiéndose decretado el embargo basado en una sentencia final y firme en cobro de dinero contra ésta, **se presume también la legalidad del embargo de sus bienes**.[37]

A su vez, del derecho consignado en el dictamen objetado surge que el foro apelado determinó que la apelante no podía valerse de su moción en oposición al petitorio sumario para enmendar la demanda. En el presente recurso, ésta señala que la sentencia dictada es insuficiente, ya que en la misma no se consignó la alegada enmienda, <u>cuando de una lectura de la demanda y de la moción en oposición surgen claramente las nuevas alegaciones</u>. Sobre este particular, advertimos que en la demanda se arguyó que el embargo era ilegal debido a que a la fecha en que se ejecutó la sentencia, <u>el apartamento ya no le pertenecía a la apelante</u>. Mientras que en la moción en oposición se aduce, <u>por primera vez</u>, que la declaración jurada que se acompañó con la moción para solicitar el emplazamiento por edicto en el caso N1CI201100561contiene meras expresiones generalizadas. Esto no fue alegado en la demanda original. La Regla 36.3 de las de Procedimiento Civil en su inciso (d), *supra,* claramente dispone que "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen". En este aspecto, nuevamente,

---

[37] Véase, *Nieves Díaz v. González Massas*, 170 DPR 820 (2010); *Rodón v. Fernández Franco*, 105 DPR 368, 370 (1976); *Frigorífico M. H. Ortiz v. Quiles*, 101 DPR 676, 688 (1973).

consignamos que meras alegaciones o teorías no constituyen prueba.[38]

Por último, argumentar que la parte apelada incumplió con el término dispuesto en la Regla 4.6 y la Regla 65.3 de las Reglas de Procedimiento Civil por haber notificado a la apelante, tanto el emplazamiento como la sentencia, <u>el mismo día de sus publicaciones</u> en el periódico Primera Hora es uno **insustancial** que no amerita mayor discusión. Surge de los autos que el representante legal de la parte apelada certificó haber depositado por correo certificado copia del emplazamiento, de la demanda y la sentencia, respectivamente, dentro <u>del término de 10 días</u> dispuestos en la regla.[39] Por lo que, repetimos que era el deber de la apelante presentar prueba que demostrara que la declaración jurada no contenía las diligencias suficientes efectuadas por la parte apelada para lograr su emplazamiento personal y/o que el TPI erró al analizar la misma.

Por su parte, y como analizáramos al comienzo de este acápite, al analizar una acción independiente de nulidad de sentencia el tribunal debe considerar si mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos, lo cual sin duda no ocurre en el presente caso.

Como correctamente determinó el TPI, la apelante responde legalmente a la parte apelada por las cuotas de mantenimiento vencidas y no pagadas del apartamento 1302 del Condominio Brisas de Solimar hasta el 4 de abril de 2013. Tanto la ley aplicable, antes citada, así como la jurisprudencia interpretativa resultan ser claras

---

[38] Véase, *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527, 531 (1981).
[39] Véase, Apéndice del Recurso a las págs. 38 y 48.

al consignar que el adquiriente involuntario, en este caso el Banco Popular, **solo respondía por la deuda de seis (6) meses y que la apelante mientras fue dueña del apartamento era responsable de las cuotas acumuladas durante ese tiempo y que nunca pagó**. El Artículo 59 de la Ley de Condominios, 31 LPRA sec. 1923d, dispone que ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca. De igual manera, resulta fútil plantear que ante la cancelación de los gravámenes del apartamento no procedía el cobro de la deuda por cuotas de mantenimiento. Puntualizamos que de los autos del caso no hay prueba alguna que demuestre que la asociación del condominio solicitó al Registro de la Propiedad la anotación de un embargo preventivo sobre el apartamento por dicho concepto. Además, como ya consignáramos, la apelante fue propietaria del apartamento desde el 1998.

Finalmente, colegimos que el foro apelado no abusó de su discreción al imponer honorarios por temeridad. Recordemos que la determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. Referente a ello, es un axioma harto conocido que los foros apelativos no debemos intervenir con el ejercicio de la discreción del foro primario, **salvo que se demuestre que hubo un craso abuso** de discreción; que el foro **apelado actuó con prejuicio o parcialidad**; que **se equivocó al interpretar o aplicar cualquier norma de derecho procesal o sustantivo** o cuando la suma impuesta resulte excesiva. *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005).

En virtud de todo lo anterior, determinamos que el TPI no cometió los errores señalados.

## IV.

Por los fundamentos antes expuestos, confirmamos la *Sentencia Sumaria* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones